# CHARLES KELLAS & COMPANY

*vs.*

# SLACK & SLACK COMPANY.

*Municipal corporations: building contracts; retention of funds;
rights of sub-contractors, etc.; what amounts to
an equitable assignment.*

Where municipal contracts provide for the withholding of
payments, under certain conditions, until satisfactory evidence
is given that all persons who have done work or furnished ma-
terials thereunder have been fully paid, or satisfactorily pro-
vided for, such provisions do not give sub-contractors any lien
upon the funds so retained, nor does it operate as an equitable
assignment of the fund.                                    p. 539

No suit can be maintained by sub-contractors in such a case
against the municipality for the money so retained.      p. 539

Assignees for the benefit of creditors are not *bona fide* pur-
chasers for value.                                        p. 540

An assignment for the benefit of creditors of the contractor
gives his general creditors no right to claim or share in funds
so retained by the city.                                  p. 540

But where the city, in a final settlement with the contractor,
gave him a warrant check for a balance, after retaining a cer-
tain sum for specific claims that had been filed, and that were
set out upon the warrant; and where the check had printed
upon it that the endorsement of the check constituted a receipt
and release from the items and amounts stated in the body of
the warrant, it was: *Held,* to amount to an equitable assign-
ment of such sum retained for the payment of the particular
items named.                                              p. 541

*Decided December 13th, 1916.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Laurie H. Riggs,* for the appellant.

*O'Mara & Angelmier* and *William F. Podlich* submitted a brief for the appellee.

BURKE, J., delivered the opinion of the Court.

The controlling facts in this record are few and undisputed. They are here stated. The Slack & Slack Company, hereinafter referred to as the contractor, entered into a contract with the Mayor and City Council of Baltimore for the paving of German street between Eutaw and South streets. Section 51A of the contract, which was known as contract No. 113, is here inserted:

"The Contractor shall furnish the Commission with satisfactory evidence that all persons who have done work or furnished materials under the contract, and who have given written notices to the Commission before or within ten (10) days after the final completion and acceptance of the whole work under the contract, that any balance for such work or materials is due and unpaid have been fully paid or satisfactorily secured, and in case such evidence is not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid may be retained from any moneys due the Contractor under the contract until the liabilities aforesaid shall be fully discharged or such notices withdrawn. The City or the Commission may also, with the written consent of the ·

Contractor, use any money retained, due or to become
due under the contract, for the purpose of paying for
both labor and material for the work, for which claims
have been filed in the office of the Commission."

The contractor completed the work according to the re-
quirements of the contract, the work was accepted by the
City, and final settlement and payment were made by the
City for the work according to the terms of a voucher and
voucher check No. 9087J to which reference will presently
be made. The contractor sub-let a portion of the work to
Kellas & Company, hereinafter referred to as the sub-con-
tractor, the appellants on this record. The sub-contractor
completed its part of the work to the satisfaction of the City.
The total amount due the sub-contractor was $7,928.80.
During the progress of the work they were paid $6,460,—
leaving a balance of $1,460 due for which amount the sub-
contractor recovered a judgment against the contractor. In
accordance with the terms of the provisions of the contract
quoted above, the sub-contractor gave written notice to the
Paving Commission of the balance due. This notice was not
withdrawn, and the balance due has not been paid or secured,
and no evidence to that effect was given to the Paving Com-
mission, and the City retained the amount in the final settle-
ment with the contractor as it was authorized to do under
the contract.

The basis for the final payment to the contractor by the
City was a voucher made up by the Paving Commission and
furnished to the City Comptroller. This voucher showed
that there was due the contractor the sum of $6,595.11, and
that from this sum was deducted and retained the sum of
$3,420.44, leaving a balance of $3,174.67 to be paid on final
estimate. A list of bills, which included that of the sub-
contractor, filed against the contractor under Clause 51A of
the contract, was shown upon the voucher. The City Comp-
troller issued to the contractor a warrant check in final pay-
ment on contract No. 113 in accordance with the voucher

mentioned. This check also showed that the City had retained on the final settlement the identical bills shown by the voucher. On the back of the warrant check, over the signature of the contractor, appears the following endorsement:

"The endorsement of this warrant check by the payee constitutes a receipt and release for the items and account stated in the body of the warrant, and it is so understood and agreed."

The contractor accepted the check, endorsed the same and received the money under the check, and the City has now in its possession the sum of money, including the sum due the sub-contractor, which was retained for the bills filed against the contractor in accordance with Clause 51-A.

On November 13, 1915, the contractor made a deed of trust for the benefit of its creditors to Albert J. Boyle, Samuel A. Vervalen and James J. Kelley. Upon a petition filed by the trustees, the Circuit Court No. 2 of Baltimore City assumed jurisdiction of the administration of the trust. The sub-contractor filed a petition in the proceedings, in which the trust was being administered, in which, after reciting substantially the facts which we have stated, it prayed for the passage of an order "authorizing and directing Albert J. Boyle, Samuel A. Vervalen and James J. Kelley, trustees for the said Slack and Slack Company, to give their written consent to the City of Baltimore and the Paving Commission to use the sum of $1,468.80, the amount retained by them under Contract No. 113, for the purpose of paying your petitioners for the work for which they filed their claim in the office of said commission," and for other and further relief. An answer was filed by the trustees and testimony was taken by the respective parties. The lower Court by its order dated May 9, 1916, dismissed the petition—holding that the petitioners were not entitled to any priority of payment for any portion of their claim against the contractor.

The appeal before us was taken by the petitioners from that order.

From the above statement of facts it appears that the question presented is one between the general creditors of the contractor—represented by the trustees—and the sub-contractor, whose work and labor created the fund which is the subject of this controversy. The City is not a party to the proceeding, and no relief is asked against it. It is generally held that a provision in a contract similar to the one under consideration does not give the sub-contractor a lien upon the money retained by the municipality, nor does it operate as an equitable assignment of the fund. It was held in *Grassmann* v. *Bonn,* 30 N. J. Eq. 490, that such a provision was probably intended for the indemnity of the public authorities against suits or claims for wages or the prices of materials, which, though unmaintainable, might nevertheless be brought against them; that it would not create a lien in favor of laborers and material men, but was intended as a means of coercion to compel the contractors to pay their debts contracted in connection with and for the work; that the public authorities were charged with no duty towards these classes of persons, and whether they would retain the fund or not was entirely at their option; and finally that the provision was not an equitable assignment on the part of the contractor of so much of the fund as might be necessary to pay such debts. *United States Fidelity and Guaranty Co.* v. *Mayor and Common Council of the City of Newark,* 81 Atlantic, 758; *Shannon* v. *Hoboken,* 37 N. J. Eq. 123; *Essex Co.* v. *Lindsley,* 41 N. J. Eq. 189. The same principle was announced in the case of *Lombard Gov. Co.* v. *Mayor and City Council of Baltimore,* 121 Md. 303, and in which we held, upon grounds of public policy, that no suit at law or in equity could be maintained by a sub-contractor against the City in respect to money retained by it under a provision in a contract similar to the one before us.

The assignees for the benefit of the creditors of the contractor are not *bona fide* purchasers for value. They stand in the place of the assignor and take the property subject to all equities against the assignor. They can assert no claim to the fund which their assignor might not assert. While it is settled, both in this Court and elsewhere, that the appellants have no lien by virtue of the provision of the contract upon the fund retained, and that the contract itself does not operate as an equitable assignment of the fund to them, it does not follow that the appellants were not entitled to the relief prayed. The fund has been retained by the City, under Clause 51A to meet the claim of the appellants, and the City was holding it until their claim was fully discharged, or the notice given had been withdrawn. Their claim was one of the items or amounts shown upon the voucher and warrant check upon and by which the final settlement and payment were made, and the endorsement of the warrant check was declared to constitute "a release for the items and amounts stated in the body of the warrant." The appellant's claim was one of these items, and we can not see how the effect of that endorsement can be modified or changed by parol evidence, or how the assignees or trustees for the benefit of the creditors can assert a claim to the fund against the act of their assignor, and in the absence of evidence that the claim has been fully discharged. It is said in 2 R. C. L., sec. 21, p. 614, that since equity disregards mere form, no particular words or particular form of instrument is necessary to effect an equitable assignment. * * * "It has been said that any order, writing, or act which plainly makes an appropriation of a fund or debt may amount to an equitable assignment; and that the true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be assignee. Thus it has been held that there is a valid assignment in equity whenever the person to whom an obligation is due authorizes its payment to another, either for his own use or for that of some other

person, or authorizes anyone to receive or hold the moneys and to apply them to any specific purpose other than for the use and benefit of the assignor. An assignment may be by parol, or in writing, either under or without a seal, or partly in writing and partly oral. Thus an oral assignment of a book account or of a debt is valid. If the equitable assignment of a debt is in writing, and intent and contract of parties are not fully expressed, it has been held that parol evidence is admissible as in similiar cases in reference to written instruments."

In *Sanquinnett* v. *Webster*, 153 Mo. 370, the Court said: "Any language or act which make an appropriation of the fund, amounts to an equitable assignment of that fund." It appears to us that in accordance with these principles and the terms of the provision of the contract before us a fair and reasonable construction of the terms of settlement made by the contractor with the City requires us to hold that there was an appropriation of the fund to the payment of the appellant's claim. It results from this holding that the order appealed from must be reversed, and the cause remanded to the end that an order may be passed as prayed for in the petition.

*Order reversed, with costs, and cause remanded.*