### In re MASON–CURLEY–BRADY, Inc.

District Court, D. Maryland.     November 2, 1928.

No. 4926.

Frederick J. Singley and Sylvan H. Lauchheimer, both of Baltimore, Md., for petitioners.

John H. Skeen, of Baltimore, Md., for trustee.

Benjamin H. McKindless, of Baltimore, Md., for bankrupt.

WILLIAM C. COLEMAN, District Judge. The question here involved arises on a petition to review certain findings of the referee in bankruptcy, which petition has been certified to this court by the referee.

The material facts are fully set forth in an agreed statement and in the findings and conclusions of the referee. They need not be restated here in detail. Summarized, they present the following question for decision: Where a municipal contract between a contractor and a municipality provides for the withholding of payments to the contractor under certain specified conditions until satisfactory evidence is given that all subcontractors who have done work or furnished materials thereunder have been fully paid or satisfactorily provided for, do such provisions, in the event of the bankruptcy of the contractor, entitle a subcontractor, who has not been fully paid or satisfactorily provided for, to claim payment from the municipality out of funds so retained, or do such funds belong to the trustee in bankruptcy as part of the bankrupt's estate, in which such subcontractor would then have an interest only as a general creditor?

In the present case, the municipality, the city of Baltimore, through its duly authorized agent, the Public Improvement Commission, under whose jurisdiction the construction in question was carried on—namely the building of a public school—has paid to the trustee the balance in its hands, now in dispute, upon being furnished by the subcontractors the requisite guaranties pursuant to the terms of its contract, it being understood that this was done without prejudice to such rights and priorities as the subcontractors might have, and merely in order to expedite a settlement of the question as to who is entitled to the funds in dispute.

The referee has found that the subcontractor is not entitled to priority of payment out of the fund, but that it belongs to the trustee in bankruptcy for distribution among general creditors. The basis of the referee's finding is that, since the contract itself provides that any funds so retained by the municipality can only be diverted to the payment of the subcontractors upon the written consent of the general contractor, and since such consent has not been given, nor has the general contractor, either by word or act, done anything that can be construed as an assignment or appropriation of this fund, the subcontractors are not entitled thereto.

The referee relies upon the case of Kellas & Co. v. Slack & Slack Co., 129 Md. 535, 99 A. 677, Ann. Cas. 1918D, 640. In this case the facts were substantially the same as those in the present case, with, however, the additional fact that, in a final settlement with the contractor, the municipality gave him a warrant check for the balance, after retaining a certain sum for specified claims that had been filed and that were set out upon the warrant, and this check contained the provision that its indorsement constituted a receipt and release for the items and account stated in the warrant. The contractor accepted this check and indorsed it under these conditions, and the court held that this amounted to an equitable assignment to the subcontractors of the sums which the municipality had retained for the payment of the particular items named. In other words, the court held that there was consent on the part of the general contractor to pay the subcontractors. Since the referee in the present case finds this element of consent to be lacking, he has decided that the subcontractors have no right to the fund, other than a pro rata share along with all other general creditors.

In order to determine whether the conclusion of the referee is sound under all the circumstances of this case, it is first necessary to understand the exact position of the trustee in bankruptcy with respect to the bankrupt's estate. Section 70a of the Bankruptcy Act (11 USCA § 110(a)) recites that the trustee shall "be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is ex-

empt," to all property which is specifically enumerated in the various subsections which follow the aforegoing general statement. As a result of this provision of the law, it is now well settled that the trustee takes the property of the bankrupt, not as an innocent purchaser, but subject to all valid claims, liens, and equities, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the Bankruptcy Act. Security-Warehousing Co. v. Hand, 206 U. S. 415, 27 S. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 S. Ct. 412, 54 L. Ed. 610; Walter A. Wood Co. v. Eubanks (C. C. A.) 169 F. 929. That is to say, whatever rights a third party has against the property of the bankrupt before his adjudication, that party, in the absence of fraud or fixed liens created by state statutes in favor of others, has against his estate in bankruptcy; or, stated in the form that is more commonly used, the trustee is said to stand in the shoes of the bankrupt, and to have no better title than the bankrupt himself had at the time of the filing of the petition, except in so far as this may be altered by fraud on the part of the bankrupt or by section 47a (2) of the Bankruptcy Act (11 USCA § 75 (a) (2).

This latter provision vests the trustee with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings on property in the custody, or coming into the custody of the bankruptcy court; that is to say, it extends, under certain circumstances with which we are not here concerned, and only under such circumstances, the title of the trustee, so that he has more than the limited title of the bankrupt. But this extension may not be invoked to deprive a creditor of the bankrupt of equities existing in his favor at the time of the bankruptcy. It was not intended to limit the general rule that a trustee takes the bankrupt estate subject to all valid liens, claims, and equities.

With the above general principle before us, what is the exact status of the fund here in question? The following facts are conceded with respect to the status of the fund: First, that the municipality had a right, under its contract with the general contractor, to withhold the funds as it did, unless and until it was satisfied that the subcontractors had been fully paid by the general contractor for the part which they had performed under the contract or had been satisfactorily secured by him. Second, that such withholding does not, however, give to the subcontractors a lien upon the money so retained, nor does it operate as an equitable assignment of it, or give them the right to maintain any suit at law or in equity against the municipality in respect to it. This proposition is clearly established as the law of Maryland by the decisions of the Court of Appeals in Lombard, Governor Co. et al. v. Mayor & City Council of Baltimore et al., 121 Md. 303, 88 A. 140, and the case of Kellas & Co. v. Slack & Slack Co., supra. Third, that the provision in the contract whereby the municipality is authorized to withold the funds, is of advantage to the municipality because, being a means of coercion in compelling general contractors to pay their debts to subcontractors, the latter, being thus assured of being paid, are more inclined to make their bids lower. Fourth, the written consent of the general contractor to disburse any of the funds so retained is necessary before so doing, pursuant to the pertinent provisions of the contract. ▇▇ Summarizing the above propositions, it is perfectly clear that none of the complainants here had any right to compel the municipality to pay them the money so retained, or any part of it, without the consent of the general contractor; but it is equally true that the general contractor had no right to compel the city to pay the money to him unless and until he had paid or properly secured the subcontractors, which he has not done, and which he is now unable to do. There is no provision in the contract limiting the time during which the city might withhold the money, other than the provision, already explained, that the city could retain it in case "satisfactory evidence that said money has been fully paid, or satisfactorily secured by the contractor, * * * is not furnished." This being true, the court is unable to see why, if the general contractor himself had no right to compel the city to surrender this money, his trustee in bankruptcy has such right, because, as we have seen, the trustee stands in the shoes of the bankrupt, and has no better title or claim to the money than the bankrupt himself had. If this be true, it is of less importance how we describe the rights of the subcontractors than how we define the duty of the general contractor, and therefore of his assignee, the trustee in bankruptcy.

We have seen that the subcontractors are not lienors or equitable assignees of the fund, nor is the fund trusteed in the sense that the subcontractors, as beneficiaries of the trust, can compel the city to turn the fund over to them through court proceedings. They are not parties to the contract with the city, and have no right of action against it. But it is not true that, because these subcontractors

may not directly compel the city to surrender the money to them, the general contractor may himself demand it, or, what is more important still, that the general contractor may tie the money up indefinitely by refusing, without valid reason, to consent to its release to the subcontractors. The city, as part of its remedy for specific performance of the contract on the part of the general contractor, should not be denied the right to require him to give his consent to, or to obtain court ratification of, the release of the fund, and the subcontractor should not be denied the right to do the same thing in a direct proceeding against the general contractor—the precise form of action adopted in the Kellas Case. The contract, in its essential elements, clearly contemplates the payment of this fund, under the present circumstances, to the subcontractors, and since the general contractor could not himself, before bankruptcy, have deprived the subcontractors of this benefit, the court concludes that it would be inequitable and an expansion of the rights and status of the bankrupt's trustee to permit him to do so.

It has been argued that, since the object of the provision whereby the city is authorized to retain the funds is to enable the city to coerce the general contractor into paying the subcontractors, when the general contractor becomes insolvent, and therefore can no longer be expected to pay, the effect of the provision disappears. But there is no such limitation reasonably to be implied from the provision itself, or from the contract as a whole. Why should it cover refusal, and not inability, to pay? The city need not have surrendered this fund to the trustee. It has done so for the purpose of expediting a judicial determination of the question to whom does it properly belong. Had the general contractor not become insolvent, or if, becoming insolvent, had caused his affairs to be liquidated by means other than through a court of bankruptcy, as, for example, through receivership in a state court or by an assignment for benefit of creditors, the obligation of the city in any of these events would have been the same, namely, to exercise its control over the fund, to the end that the subcontractors were paid. If, therefore, it be true that neither the general contractor himself, nor his common-law assignee, nor his statutory receiver, could have required the surrender of this fund, or could, without just cause, have kept it from the subcontractors, to say that the trustee in bankruptcy can nevertheless do this is to place him in a paramount position, which the Bankruptcy Act does not accord him.

We have seen that these subcontractors rely, in submitting their bids, upon the extra protection which this particular provision of the general contract specifically states it affords them. To take this protection away from them, albeit they cannot now themselves directly compel the city to liquidate the indebtedness, would in effect amount to the bankruptcy court requiring the city to breach its contract in one of its essential features. The general contractor is himself estopped from claiming that he has any right to do this, and no theory occurs to the court on which it would be other than inequitable to say that the trustee in bankruptcy could do it.

It is, of course, the duty of the bankruptcy court to see that there is surrendered to the trustee every interest, of whatsoever kind, to which the bankrupt himself is entitled, to the end that general creditors are protected to the greatest possible extent; but, in doing so, the court is not permitted to override the clear equities of other parties, and to remove them from a preferred position, which is not otherwise subject to attack under any provision of the Bankruptcy Act, and to relegate them to an inferior position, merely because it would be advantageous to the estate as a whole so to do.

The court believes that in the foregoing there is nothing inconsistent with the decision in the Kellas Case. That decision recognized the priority of the subcontractor, because the general contractor, on the particular facts, was estopped to deny that he had consented to such priority. This decision is not to be taken as authority for the further proposition that under *no* circumstances, in the absence of express or implied consent on the part of the general contractor, is he, or his assignee, to be denied the right to claim the fund so retained. The fact that in the Kellas Case a final and complete settlement was involved, contrary to the situation in the present case, is not material. The subcontractors have asserted their claims in the manner and time prescribed. Withholding of the fund by the city, or consent on the part of the general contractor that it be disbursed to the subcontractors, is not dependent upon completion of the entire work. Such may occur before, as well as after, completion.

The referee argues that to award the fund to the subcontractors, without the consent of the general contractor, is equivalent to permitting the city, through the agency of the Public Improvement Commission, to vary the terms of its contract with the general contractor, without his consent, which would be beyond the power of the commission, and therefore illegal. But this argument loses sight of the

fact that the assignee of the bankrupt general contractor, namely his trustee, should not refuse to give such consent when the same refusal, if made by the bankrupt himself, would be contrary to the intent of the contract and subject him to a proceeding instituted by the city to compel him to give such consent or to ratify the payment.

The court therefore finds that the referee was in error in deciding that the subcontractors are not entitled to priority of payment out of the funds in dispute. An order will be signed according them such priority.