GREEN, Judge,
delivered the opinion of the court:
Plaintiff in this case brings suit to recover the value of certain pipe furnished to the Government and used in construction work on the Aberdeen Proving Ground, at Aberdeen, Maryland. The pipe was furnished by the John Maneely Company, a partnership in which James F. Maneely was a partner. He subsequently died, and the other partner, Edward F. Maneely, became administrator of the estate of the deceased. The John Maneely Company still continued in business and is the plaintiff in the suit.
The evidence shows that the Maryland Dredging & Contracting Company entered into a “ cost-plus contract ” with the defendant to furnish certain material, etc., for construction work on the Aberdeen Proving Ground, the Government to pay under certain conditions the cost of what was furnished under the contract and an additional sum by way of compensation to the contractor. The contract provided for the making of subcontracts and also provided for the termination of the contract when the contracting officer deemed it advisable, and further that in case the contract was so terminated, the “ contracting officer shall assume and become liable for all such * * * unliquidated claims as *628 the contractor may have theretofore, in good faith, undertaken or incurred in connection with said work.” The Maryland Dredging & Contracting Company entered into a subcontract with Eiggs, Distler & Stringer, Inc., by which the last-named corporation obligated itself to furnish certain materials, etc., for the same work. The constructing officer at the Aberdeen Proving Ground issued an order, or orders, for a certain amount of pipe and other materials, which was transmitted to the subcontractor, which in turn directed the John Maneely Company to furnish the pipe so ordered and deliver it at the Aberdeen Proving Ground for the account of the said Eiggs, Distler & Stringer, Inc. The John Maneely Company carried out this order and so delivered the pipe involved in this case sometime in September, 1918. In November following the constructing officer ordered the work on the contract stopped, terminated the contract with the original contractor, and gave notice that the contract with the subcontractors had been terminated. About the same time, the constructing officer authorized and directed the original contractor to give notice that all bills that were outstanding at a specified date should be submitted to him for payment. In making settlement with the other contractors, the Government did not pay for the pipe furnished by the John Maneely Company and involved herein.
Pursuant to the notice given by the constructing officer the John Maneely Company presented its bill for the pipe that was so furnished, but the bill was not approved, the Government officials claiming that the bill was excessive and the receipt of some of the pipe was questioned. After a prolonged dispute of some three or four years, the Government officials admitted the receipt of the pipe and approved the claim in the amount of $5,840.50. This value was less than had been claimed by the Maneely Company, but that company accepted this determination, and in January, 1922, two vouchers were prepared and approved by the commanding officer at the Aberdeen Proving Ground covering payment for the pipe so furnished in the total amount of $5,840.50, which was the fair value of the pipe. In due course these vouchers were certified to the Comptroller General and by him disallowed on the ground that no privity of contract *629 existed • between the John Maneely Company and the Government.
The défense made herein is, first, that there is no privity of contract between the United States and the plaintiff, who was a subcontractor; and second, that in any event the statute of limitations has run against the claim.
Considering the point first named, it will be observed that the contract gave the contracting officer the right to abandon the work and terminate the contract, but in such case made the contracting officer liable for such unliquidated claims as the contractor may have in good faith incurred in connection with the work. The contract also provided in substance that when the contracting officer conformed to the provisions above stated the United States should be discharged from all claims on the part of the contractor. See Finding III. These provisions clearly constituted a promise for the benefit of the plaintiff, for although plaintiff was not named in the contract, it held an unliquidated claim at the time the contract was terminated. It is a well-settled rule that a party may maintain a suit on a promise made to another for his benefit. Hendrick v. Lindsay, 93 U. S. 143. There are some limitations to this rule, which are well expressed in Vrooman v. Turner, 69 N. Y. 280, as follows:
“ There must be, first, an intent by the promisee to secure some benefit to the third party, and second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise.”
The facts in the case at bar are clearly covered by the doctrine as above stated. The instant case, however, is not one of novation; that is, it is not a case where for a consideration one promises to pay the debt of another. It is simply a case where A, owing a debt to B, agrees to pay the amount thereof to C, and B, under the provisions of the agreement, is thereupon to have no claim against A. The consideration, of course, is the abandonment by B of the claim which he would otherwise have had. In our opinion the suit is clearly upon a contract made for a valuable consideration, and is one over which this court is given jurisdiction.
*630 As before stated, the second point made on behalf of the defendant is that the claim is barred by the statute of limitations, and in support of this claim it is urged that the claim of plaintiff accrued when the pipe was furnished and supplied to the defendant, which was more than six years before the action was commenced.
In order to determine whether the statute had run against plaintiff’s claim, it will be necessary to analyze the contract, which is very loosely drawn and must be interpreted in the light of the surrounding circumstances and the consequent understanding of the parties. From what has already been said, it will be seen that it was what is commonly known as a “ cost-plus contract.” One thing, however, is definitely fixed by the contract and that is that defendant was not to pay whatever cost or price the original contractor might have paid or agreed to pay for material furnished. On the contrary, the amount to be paid, and whether it was to be paid at all, was determined by a provision that the contractor should be reimbursed for “ such of its actual net expenditures in the performance of said work as may be approved or ratified by the contracting officer * * (See Finding III.) This is the only provision with reference to payment and under its terms nothing was due until such ratification or approval took place. Up to that time, the original contractor had no claim against the Government under the contract. While this provision in terms applies only to the “ contractor,” we think it was clearly understood between the contracting parties that it applied also to the claims which might be made upon the termination of the contract by a subcontractor or other party furnishing materials upon order of the subcontractor, and such was the interpretation put upon it by the Government officials who entered into the contract on behalf of the defendant, and whose duty it was to approve or disapprove the claims made under the contract. Plaintiff, the original contractor, and the defendant, all treated the contract as requiring that all bills should be submitted to the contracting officer and not paid until he had approved them. This fact shows clearly what the understanding of the parties was. We think also that this was a fair and reasonable construction *631 of the contract. Any other construction would have placed the Government at the mercy of the contractor in acting under a cost-plus contract. While the provision, on first consideration, seems to be harsh, it was necessary. Otherwise, the Government would be liable merely on a showing that the contractor had furnished certain materials and paid a certain amount therefor, regardless of whether the amount paid was reasonable or proper. There must be some limitation on the amount for which the Government would be liable and the parties agreed upon these terms, evidently having confidence that the contracting officer would act in an equitable manner.
The principle that the construction which the parties to a contract put upon it will prevail over the literal terms thereof, adopted in District of Columbia v. Gallaher, 124 U. S. 505, 510, is applicable in construing the contract. It should be noted also that the provision under which we have found the plaintiff was entitled to bring this suit applied only to unliquidated claims, that is, claims the amount of which had not been determined. This showed that it was intended that the amount should be determined by the contracting officer in the manner provided in the contract.
It is evident that the claim of plaintiff did not accrue when the pipe was furnished, as contended by defendant. At that time there was no liability on the part of the defendant to the plaintiff for two reasons: First, because the plaintiff did not deliver the pipe for itself, but for and on account of the subcontractor. This alone would show that at that time there was no rightful claim on the part of the plaintiff against the defendant. Second, as defendant never ordered any pipe from plaintiff, no liability on the part of defendant to plaintiff could arise until after the contract had been canceled, when the promise to pay plaintiff the amount of the debt originally owing to the subcontractor went into effect. But even then, as has been shown above, the defendant was not bound under the contract to pay the claim until it was approved or ratified by the contracting officer or his successors. The cases cited on behalf of defendant as holding that its liability accrued *632 when the materials were furnished are based upon an altogether different state of facts and have no application here.
While the case has been presented on behalf of defendant solely on the theory that the liability of defendant accrued when the pipe was furnished, we do not overlook that in the further presentation of the case another theory may be suggested. It might be argued that plaintiff was not compelled to wait indefinitely or for several years, as it did, for the contracting officer to pass upon its claim, and that it must have been understood by the parties to the contract that this determination would be made within a reasonable time; and if not made within a reasonable time plaintiff could disregard the original contract and bring suit on an implied contract to pay the value of the pipe, if it had been taken over or used by the Government. There is, however, no evidence as to what would have been a reasonable time. So also, it may be said that independently of the theory just set forth plaintiff was not obliged to accept the terms of the original contract to which it was not a party, but could elect if it saw fit to disregard the written contract and bring a suit for the value, of the pipe on an implied contract to pay for the same. Possibly it would be a sufficient answer to say that plaintiff did not so elect but proceeded in accordance with the terms of the original contract, and finally in 1922 its claims were approved and ratified. But we have no occasion to determine any questions that may arise as to the right of the plaintiff to bring suit on an implied contract. Conceding for the sake of the argument only that a cause of action arose on an implied contract by reason of the Government having taken over the pipe and treated it as its own, although it had not ordered the pipe, the question still remains as to what time this taking took place. In this connection it will be observed that there is nothing in the evidence to show that the Government ever used the pipe. The original construction work having been stopped shortly after the pipe was received, the probabilities are that it was never used in the work contemplated by the original contract. As before stated, in 1922 the dispute over whether the pipe had been received and as to what its value was, was ended by an *633 agreement between the successor to the contracting officer and the plaintiff as to the value of the pipe, and the issuance of vouchers for the amount agreed upon, which vouchers were not approved by the Comptroller General. The vouchers and documents supporting them together with other evidence show that the defendant did in fact receive the pipe, that it had been originally ordered from the contractor for use in performing the original contract, and that it was delivered on account of the subcontractor. But all of this relates back to the original contract and we are now considering whether a cause of action would arise under an implied contract. There being no evidence as to the pipe being used by the Government or when it was taken over, a cause of action could not arise until the pipe was accepted by the Government, and this acceptance did not occur until an agreement was reached as to the value of the pipe and vouchers were issued for payment of the value agreed upon. The fact that it had been received by the Government and vouchers were issued showed an acceptance of the pipe. The pipe having been ordered in the first instance on approval, the circumstances were much the same as where some person orders a suit of clothes on approval and after delivery of the suit a long dispute ensues as to the liability of the party who ordered it. Finally the. dispute is ended by the acceptance of the suit on the part of the person who ordered it and an agreement between the parties as to the price to be paid for it. Under such circumstances a court will not concern itself as to whether the suit was ever worn but will hold that the party ordering the suit is liable for the agreed price. So in this case the defendant, having accepted the pipe and agreed with plaintiff as to the price to be paid for it, is liable for the payment of this agreed price, whether it ever made use of it or not. So far as we have any evidence in the case before us, there is nothing to show that the cause of action herein accrued at any earlier date than the time when the pipe was accepted. The Government may have taken charge of the pipe and treated it as its own at some time prior to the date when the parties agreed on the value of the pipe and it was accepted, but there is nothing in the evidence to show this. The. burden of proof is upon the *634 defendant to show that plaintiff’s cause of action accrued more than six years prior to the commencement of this suit. Whether this cause of action be considered to be one founded on the provisions contained in the original contract, with reference to unliquidated claims at the time of the cancellation thereof; or to be one arising upon an implied contract, the defendant has failed to show that it accrued within such time that it is barred by the statute of limitations.
These views make it unnecessary to consider other propositions advanced by counsel for plaintiff in support of its claim. It follows that plaintiff is entitled to recover as prayed in its petition, and judgment will be rendered accordingly.
Williams, Judge, and LittletoN, Judge, did not hear and took no part in the decision of this case.
Geaham, Judge, and Booth, Chief Justice, concur.