John A. HADDEN, as Trustee in Bankruptcy of Manufacturers Trading Corporation and Manufacturers Discount Corporation,

v.

The UNITED STATES.

No. 50038.

United States Court of Claims.

April 5, 1955.

Order Vacated on Rehearing

July 12, 1955.

See 132 F.Supp. 202.

Theodore B. Wolf, New York City, for plaintiff. Israel Akselrod and Zalkin & Cohen, New York City, were on the briefs.

Harry I. Rand, Washington, D. C., for intervenors. Solomon Dimond, New York City, was on the briefs.

William A. Stern II, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Carl Eardley, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff herein is the trustee in bankruptcy of two bankrupt corporations, one of which was the assignee of a prime contractor under a contract with the United States.[1] With the written consent of the Government, the prime contractor assigned moneys due or to become due under the contract, and in consideration for such assignment the assignee advanced to the contractor certain moneys to be used in the performance of the contract. The trustee in bankruptcy instituted suit to recover $197,423.24 alleged to be due the assignee under War Shipping Administration Contract No. 11528. Defendant filed a general denial to the petition and asserted certain counterclaims aggregating $2,010,165.78. Some of the counterclaims are alleged by defendant to arise in connection with the contract in suit. Subsequently, Condenser Service & Engineering Co., Inc., and 18 others who had supplied labor and materials to the prime contractor in connection with its work under the contract in suit, filed a motion for leave to intervene and file a petition claiming that there was due them $36,582.24 for work, labor and materials furnished at the request of the prime contractor in the performance of the contract in suit. In the application for intervention, the applicants urge (1) that they have a pecuniary interest in the subject matter of the plaintiff's suit, (2) that the claims of plaintiff and the applicants present common questions of law and fact, (3) that a judgment in plaintiff's suit may be binding on the applicants, and (4) that the plaintiff does not represent the applicants' interests. Both plaintiff and defendant objected to the allowance of the motion for intervention on the ground that the petition in intervention failed to state a cause of action against the United States. Although at that time the court had just promulgated its revised Rules, 28 U.S.C.A., including Rule 24 relating to intervention, none of the parties made reference to that rule or to the cases decided by other Federal courts under its counterpart in the Federal Rules of Civil Procedure, Rule 24, 28 U.S.C.A.

The motion for leave to intervene was allowed and the intervenors' petition was filed. There is now pending for determination plaintiff's motion for judgment on the pleadings dismissing the petition in intervention, or for summary judgment against the intervenors.

It is apparent from the intervenors' application for intervention that they were attempting to bring their motion within the terms of Rule 24(a) of the Rules of the Court of Claims as revised May 15, 1951, and also within the terms of Rule 24(a) and (b) of the Federal Rules of Civil Procedure on which the Court of Claims' rule was based. Rule 24 of the Federal Rules provides as follows:

"(a) Intervention Of Right. Upon timely application anyone shall be permitted to intervene in an

1. Manufacturers' Discount Corporation.

action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof.

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Rule 24 of the Court of Claims provides as follows:

"(a) When Permitted. Upon timely application anyone may be permitted to intervene in an action (1) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action, or (2) where the applicant has a pecuniary interest in the subject matter of the main action;

"(b) Procedure. * * *"

It is intervenors' position that intervention was and should have been granted them as a matter of right because, under the terms of the contract between the bankrupt corporation's assignor and the Government, the intervenors are third party beneficiaries and as such are entitled to sue on the very claim sued on by the trustee in bankruptcy of the contractor's assignee. If the intervenors are third party beneficiaries under the contract in suit, then they would be entitled to intervene as a matter of right under either Rule 24 of this court or under Rule 24 of the Federal Rules of Civil Procedure. Pure Oil Co. v. Ross, 7 Cir., 170 F.2d 651; State of Minnesota v. Northern Securities Co., 184 U.S. 199, 22 S.Ct. 308, 46 L.Ed. 499.

The amount sued for by plaintiff herein represents certain funds withheld by the Government from the contractor under clause 3(e) of WSA Contract No. 11528. That clause provides as follows:

"Moneys ascertained to be or to become due or claimed by any person for work performed or materials or services furnished in connection with the work, together with probable expenses to be incurred in connection therewith, may be withheld by the Contracting Officer until all such persons' claims and demands shall have been settled."

At the time this contract was entered into, the contracting agency had been authorized to waive the requirements of the Miller Act for furnishing the Government with a payment bond.[2] The intervenors herein are the persons who performed work and furnished materials and services in connection with the contract and who, according to their petition, were not paid some $36,582.24 owing to them by the contractor. Intervenors contend that the contract in suit was performed in New York and New Jersey and that in both jurisdictions the rights of third party beneficiaries to sue on promises made for their benefit have been upheld. It is intervenors' position that the above-quoted paragraph was inserted in the contract in lieu of the waived payment bond and that such paragraph

---

**2.** 49 Stat. 793, 40 U.S.C.A. §§ 270a, 270b; authorization to waive performance and payment bonds: Act May 2, 1941, § 2 (c), 55 Stat. 149, 50 U.S.C. § 1261(c); Executive Order No. 9001, December 27, 1941, 50 U.S.C.A.Appendix, § 611 note.

was clearly for the benefit of the same persons, *i. e.*, laborers and materialmen, who would have been benefited under such payment bond.

■ It is true that in both New York and New Jersey third parties may sue on contracts clearly made for their benefit. It is also true, as pointed out by intervenors, that third party beneficiaries under a Government contract may bring suit against the United States. United States v. Huff, 5 Cir., 165 F.2d 720, 1 A.L.R.2d 854; Maneely v. United States, 68 Ct.Cl. 623. However, in any case, it is necessary to determine whether the *terms of the contract* in question necessarily require the promisor to confer a benefit upon third persons. As pointed out by Professor Williston in Volume Two of the Revised Edition of his work on Contracts, beginning on page 1029, the determination of that question is not always an easy one, and the results reached by the courts have not been consistent. Section 402 of Williston's chapter on Contracts for the Benefit of Third Persons (pp. 1157 and 1158) appears to bear directly on the type of promise on which intervenors herein are relying:

"402. Persons incidentally benefited.

"It sometimes happens that a person who is neither the promisee of a contract nor the party to whom performance is to be rendered will derive a benefit from its performance. Such a person is neither a donee beneficiary nor a creditor beneficiary, but belongs to the third type— the incidental beneficiary. 'An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee.' [Rest., Contracts, § 147 * * *] A typical case is where A promises B to pay him money for his expenses. Creditors of B are not generally allowed to sue A. It is obvious that such creditors' interest can at most be only a derivative one.

"So under a promise made in a building contract that there may be retained from payments due the contractor a sufficient sum to pay claims for labor and material, there can be no recovery by a creditor of the contractor for labor or materials. [Kellas (& Co.) v. Slack & Slack Co., 129 Md. 535, 99 A. 677; Grassmann v. Bonn, 30 N.J.Eq. 490; United States Fidelity, etc., Co. v. (City of) Newark, 79 N.J.Eq. 584, 81 A. 758, 37 L.R.A.,N.S., 575; Standard Gas Power Corp. v. New England Casualty Co., 90 N.J.L. 570, 101 A. 281. * * *]"

In Grassmann v. Bonn, supra, the New Jersey court held that such a provision was intended as a means of corecion to compel the contractors to pay their debts contracted in connection with the work and that the public authorities were charged with no duty towards laborers and materialmen, the retention of the fund or not by the city being entirely at the city's option. The court also held that the provision in the contract did not work an equitable assignment on the part of the contractors of so much of the fund as might be necessary to pay such debts. In Shannon v. Mayor, etc., of City of Hoboken, 37 N.J.Eq. 123, the contract with the city provided that the contractor would promptly pay laborers and materialmen and that if he failed to do so, any money due or to become due such contractor from the city might be used by the city to pay for the labor and materials. The contractor assigned all moneys due him and to become due him under the contract. Subsequent to the assignment, unpaid laborers and materialmen presented their claims to the city contending that they were entitled to be paid out of funds retained by the city. Petitioners for intervention contended that notwithstanding the assignment, they were entitled to recover from the city because the contract deprived the contractor of the power to transfer his claims. The Vice Chancellor held that the covenant merely authorized the mu-

nicipality to withhold and appropriate moneys earned under the contract and that no beneficial interest was transferred, nor was the municipality made subject to any duty or liability to the laborers or materialmen.

In Board of Chosen Freeholders of Essex County v. Lindsley, 41 N.J.Eq. 189, 3 A. 391, the contract gave the municipality the right to withhold amounts due the contractor until the claims of laborers and materialmen presented to the municipality against the contractor were satisfied. Subsequent to becoming indebted to laborers and materialmen for work and materials furnished in the performance of the contract, the contractor assigned his right to any money due or to become due to a creditor who had loaned him funds to use in performing the contract. The creditor-assignee completed the contract upon default of the contractor, and demanded payment of the withheld fund. The unpaid laborers and materialmen also demanded payment from the same fund. The court held in favor of the assignee, stating that the withholding provision in the contract worked no equitable assignment to the laborers and materialmen of the money withheld and that the contractor, except for the city's right to withhold, had complete control over any sums earned under the contract and was accordingly free to assign its claims to such money to its creditor who later completed the contract. The court noted that the provision in question merely authorized the city to withhold and not to pay.

The contract provision relied on by intervenors herein is merely an authorization to the contracting officer to withhold funds otherwise due the contractor. It says nothing about paying such funds to laborers or materialmen. There was no duty imposed on the government to withhold such funds, but

merely an option to do so in its discretion. Under the plain language of the provision, and in view of the applicable authorities,[3] we cannot construe the provision as indicating an intent on the part of the government as promisor to confer a benefit on unpaid laborers and materialmen. Accordingly, we conclude that the intervenors have no standing to sue the United States as third party beneficiaries under paragraph 3(e) of the contract, and are not entitled to intervene as a matter of right.

Intervenors next contend that they should be allowed to intervene on the ground that although they may not have a valid claim against the United States under the contract, they do have, as against the plaintiff, a superior right to the fund alleged to be in the custody of this court and in connection with which fund the government is merely a stakeholder. Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736. In that case the government was asserting no claim to the fund in suit and the court consented to determine the conflicting rights of the two claimants to the fund although one of the claimants (the plaintiff) had no standing to sue the United States.

In the instant case, the government is not a mere stakeholder and there is now no fund in the custody or control of this court. Defendant denies that it owes plaintiff any money under the contract and asserts counterclaims representing damages allegedly owing to defendant by the contractor and arising out of the very contract in suit. Recognizing this fact, intervenors then urge that they should be allowed to remain in the case because it may ultimately be determined that the government has no valid counterclaims or offsets against plaintiff's claims, and that a sum large enough to satisfy all or part of inter-

---

3. See 77 A.L.R. 21, ff; 81 A.L.R. 1271, ff; Bristol Steel & Iron Works v. Plank, 163 Va. 819, 178 S.E. 58, 118 A.L.R. 57, 55. We have not discussed the numerous cases referred to by the parties inasmuch as they did not bear directly on the precise issue herein.

venors' claim may be due and owing to the plaintiff. To the extent that such award or judgment is ruled free from counterclaim or offset and thus payable under the contract, the intervenors contend that the government *will be* a mere stakeholder and that the intervenors would then be entitled to an "equitable priority" in such fund under the holding of this court in Royal Indemnity Co. v. United States, supra.

We cannot say that a court would never permit intervention on the theory suggested by the intervenors, since the courts have become increasingly liberal in permitting intervention. However, we think that the allowance of such an application for intervention would lie in the sound discretion of the court and we shall accordingly address ourselves to certain cases in the other federal courts where the facts have been analogous and the courts have been called upon to exercise their discretion in permitting or denying intervention.

In Harrington Bros., Inc. v. City of New York, 2 Cir., 1929, 35 F.2d 1009, a judgment creditor of the plaintiff moved[4] to intervene for the purpose of having the court pay over to it any recovery which might be awarded to the plaintiff in its suit against the City of New York. Intervenor had no claim against the defendant. In denying the motion the court stated:

"The proposed petitioner [for leave to intervene] is interested only in the proceeds, if any, which will result from this suit, and what he asks here, in effect, is to have this court, sitting in equity, act as a means for collecting a money judgment which the petitioner has secured, by causing any recovery, which may be granted to plaintiff herein, to be paid in part to the petitioner. I do not see that there is any ground

whatever for an intervention under such circumstances.

"To allow such an intervention as the petitioner seeks would constitute a precedent under which any judgment creditor, or perhaps any creditor, of a plaintiff in an equity suit in this court, might claim a right to intervene, irrespective of his relation to the suit before the court, or of his interest in the remedy invoked by the plaintiff."

In United States v. 1,830.62 Acres of Land in Botetourt County, D.C., 51 F. Supp. 158, a surety company moved under Rule 24(a) (3) of the Federal Rules of Civil Procedure for leave to intervene in a condemnation suit brought by the United States against the Triton Company. It happened that the Triton Company was a party to a contract with the United States for the manufacture and sale to the United States of certain items, and that the intervenor was the surety company on two bonds required by the United States from its contractor, the Triton Company, to secure certain advance payments made to that company by the United States, and to insure performance of the contract. An involuntary petition in bankruptcy had been filed against the Triton Company but it had not been adjudged insolvent as yet. Pursuant to the condemnation statute, an amount deposited by the United States in court had been applied to satisfy a number of liens filed against the property sought to be condemned in order to stop the running of interest. The final award in the condemnation proceedings exceeded the fund so deposited and the court expected to pay over the balance to the receiver in the Delaware bankruptcy court. The intervenor in the condemnation proceeding wanted the court to render an accounting showing the amount of the Triton Company's obligation to the United States under the contract,

---

4. The motion to intervene was under Equity Rule 37, 28 U.S.C. § 723. This rule was the predecessor to present Rule 24 of the Federal Rules of Civil Procedure.

and to order that such obligation be paid to the United States from any amounts owing from the Government to Triton in connection with the condemnation award, thus removing any danger that the intervenor would have to respond as surety under the bonds in case of default. The court refused to grant the motion on a number of grounds. The court noted that the relief asked by the intervenor would fundamentally alter and seriously complicate the character of the condemnation proceedings. It pointed out that the effort to intervene was based on an apprehension that the Triton Company might not satisfy its obligation to the United States on which the intervenor was surety and that the United States might look to the intervenor for payment. If intervenors' fears were realized, the court pointed out that the surety, upon payment, would be subrogated to all the rights of the United States against the Triton Company and could enforce them if the Triton Company was solvent at that time. The court then said:

"  *   *   * If it happens that the Triton Company is adjudicated a bankrupt in the proceeding pending in Delaware and if the United States did not prove its debt, if any, in the bankruptcy proceeding,  *   *   * [the bankruptcy act] affords the surety the opportunity to protect its rights. Apparently what the petitioner fears is that the Triton Company may prove to be insolvent resulting in an inability to pay its debts in full; and it hopes, through the prayer of its petition, to insure that the debt on which it is contingently liable will be satisfied in full before an adjudication in bankruptcy takes place, leaving the other creditors to divide the remnants of the estate. We need not consider whether the petitioner, even if called on to make payment under the bonds, will occupy any preferred status as a creditor of the Triton Company, either through the nature of its obligation or through subrogation to the priorities accorded the United States by statute. If it does occupy a preferred status it is protected against loss; if it becomes merely a common creditor, then it should not be allowed to obtain an advantage over other common creditors by the course it seeks to pursue. Whatever may be the purpose of its desire to intervene, there is no sound reason why it should be permitted to transform the entire nature of the pending suit and complicate and delay its termination when it has ample remedies otherwise." 51 F.Supp. at pages 161, 162.

■ In the instant case the intervenors are asking this court to adjudicate claims which they assert against the plaintiff and in which the defendant has no interest. There is no contention by the intervenors that the issues between them and the plaintiff cannot be properly adjudicated in a separate suit. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39; Sutphen Estates, Inc. v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19. Assuming, without deciding, that this court has the power to permit the intervention for the purpose requested, we are not disposed under the circumstances here present, to act as a means for collecting a debt which intervenors say plaintiff owes them. Action on that debt in another court or in a bankruptcy proceeding will not be barred by a judgment for plaintiff in this suit, and a full hearing on intervenors' claim in this court would unduly complicate the issues and delay disposition of plaintiff's and defendant's respective claims herein. The court said in Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., D.C., 51 F.Supp. 972, 973:

"  *   *   * Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, argu-

ments, motions and the like. which tend to make the proceeding a Donnybrook Fair."

In denying the petition for intervention we do not decide whether, if the Government should fail to establish its counterclaims, it could still assert its withholding right under clause 3(e) of the contract; nor do we decide what is the effect of the assignment of the rights of the contractor, or of the bankruptcy of the assignee, upon such withholding right.

Plaintiff's motion for judgment on the pleadings dismissing the petition in intervention is allowed and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.