NORRIS, Circuit Judge:
 

 The Chartered Bank of London (Bank) appeals from a district court order affirming a judgment of the bankruptcy court holding the Bank’s security interest in property of Del Norte Depot, Inc. (Del Norte) unperfeeted and ordering repayment of moneys paid it by the debtor.
 
 [1]
 
 We reverse.
 

 
 *559
 
 I
 

 The issues in this case revolve around alleged defects in filings of UCC financing statements and publication of bulk transfer notices by the Bank. The validity of payments made by Del Norte to the Bank are also challenged. The facts are somewhat complex.
 

 In March 1972, Del Norte opened “The Depot Restaurant.” To refinance purchases of furniture, fixtures and equipment which it had earlier purchased from several vendors, on March 27, 1972 Del Norte borrowed $62,499.00 from the Commercial and Farmer’s National Bank.
 
 [2]
 
 On the same day, Del Norte executed a written security agreement in favor of the Bank purporting to secure the loan and all future advances made by the Bank with specific items of Del Norte property. The Bank recorded a UCC financing statement in the office of the California Secretary of State on April 13, 1972 but failed to list the debtor’s trade name in its filing. No bulk transfer notice was published or recorded in connection with this transaction. After a fire at the restaurant in April, the Bank, in December, advanced $12,499.80 more to Del Norte which was used to pay for additional property which the company had earlier obtained on credit from its suppliers. (Both the March and the December loans will be referred to as the 1972 loans).
 

 In September 1974, Del Norte opened a second restaurant under the name “Mama Mia’s,” and on March 17,1975 executed two promissory notes to the Bank. The first, for $36,143.89, was to refinance the two 1972 loans, while the second, for $80,000, was used to satisfy a $47,000 loan from Commercial and Farmer’s Bank and a $33,-000 loan from American National Bank. (These will be referred to as the 1975 loans). Security agreements were executed in connection with both notes, and on March 20 the Bank filed a second UCC financing statement with the Secretary of State describing as its collateral all restaurant furniture, equipment and fixtures owned by Del Norte and described in the March 17 security agreements. The financing statement again failed to list the debtor’s trade name. A bulk transfer notice was published on March 4. In September, the name of Mama Mia’s restaurant was changed to Jackson’s Restaurant.
 

 In July 1976, the Bank made a Small Business Administration guaranteed loan to Del Norte of $212,500 (the 1976 loan). Del Norte executed another security agreement and financing statement providing for an all-inclusive pledge of the bankrupt’s property at both the Depot and Jackson’s restaurant. The Bank filed a UCC financing statement in connection with this transaction but did not publish or record a bulk transfer notice respecting the 1976 security interest it had taken.
 

 On April 5, 1977, Del Norte filed a petition for relief under Chapter 11. After it filed its petition but before it was adjudicated a bankrupt, Del Norte made payments to the Bank totalling $32,967.69. These payments were made by checks countersigned by the bankruptcy judge.
 

 On March 8, 1978 the Bankruptcy Court entered its order adjudicating Del Norte a bankrupt, and Appellee Diamant was thereafter appointed trustee of the Del Norte estate.
 

 Diamant challenged the Bank’s security interests, arguing that failure to list Del Norte’s trade name in the 1972 and 1975 financing statements filed by the Bank made the security interests taken by the Bank in those years unperfected, and that the 1976 security interest is void due to the Bank’s failure to publish a bulk transfer notice. The trustee argued also that the post-bankruptcy payments made by Del Norte to the Bank were contrary to the provisions of § 70d of the Bankruptcy Act
 
 *560
 
 and must be returned to the trustee. The bankruptcy court held for the trustee on all counts and the district court affirmed. The Bank appeals.
 

 II
 

 It is not disputed that the financing statements filed by the bank in connection with the 1972 and 1975 loans failed to indicate that Del Norte was operating under the trade names “The Depot Restaurant” and “Mama Mia’s Restaurant.” We held in
 
 National Cash Register Co. v. Danning (In re Thrift Shoe Co., Inc.),
 
 502 F.2d 1211, 1213 (9th Cir.1974), that under California law a financing statement which failed to list a debtor’s trade name was insufficient to perfect a security interest.
 
 [3]
 
 Relying on our holding in
 
 National Gash Register,
 
 the bankruptcy court held that the Bank’s 1972 and 1975 security interests were unperfect-ed and that, under § 70c of the Bankruptcy Act, the trustee’s rights are thus superior to those of the Bank.
 

 Although conceding that its filings in connection with the 1972 and 1975 loans were ineffective to perfect its security interests, the Bank argues that transition provisions passed by the California legislature in connection with the 1973-74 amendment to the California version of the Uniform Commercial Code (the California Code) save those security interests.
 
 [4]
 
 We agree. Section 11107 of the Code provides that the California version of the Uniform Commercial
 

 code as it existed prior to January 1, 1976, shall apply to any questions of priority if the positions of the parties were fixed prior to January 1, 1976. In other cases questions of priority shall be determined by this code as amended by the Legislature at the 1973-74 Regular Session.
 

 Cal.Com.Code § 11107 (West Supp.1982)
 

 Since the amended version of the California Code does not require a financing statement to list the trade name of a debt- or, whether the failure to include the debt- or’s trade names in the 1972 and 1975 filings causes the security interests taken in those years to be unperfected depends when the positions of the parties were fixed. Section 70c of the Bankruptcy Act gives the trustee the rights of a “creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists,” 11 U.S.C. § 110(c) (1976) (repealed 1978). Since the rights of the trustee did not arise until the date of bankruptcy, April 5, 1977, it was not until that date that the positions of the parties were fixed. Thus, under § 11107, questions of priority between the Bank and the trustee are governed by the amended version of the California Code and the Bank’s security interests are perfected. The Bank thus takes priority in the Del Norte property over the trustee.
 
 [5]
 

 
 *561
 
 III
 

 We turn next to the various defects alleged to exist in the bulk transfer notices required to be published in connection with the 1975 and 1976 loan transactions.
 
 [6]
 
 We deem the question whether the 1975 notice met the requirements of § 6107 irrelevant, for we hold that the bulk transfer notice published in connection with the 1975 loans is immune from challenge because the applicable statute of limitations expired before the debtor filed its petition in bankruptcy. Section 6111 of the California Code provided that, in the case of a security interest which constituted a bulk transfer, no action could be brought under the Code more than one year after the date on which the security interest was perfected unless the transfer was concealed, Cal. Com.Code § 6111 (West Supp.1982).
 
 [7]
 
 We have held that § 11107 caused the Bank’s security interest to be perfected as of January 1, 1976, the effective date of the 1973-74 amendments. Any challenge to the Bank’s interest would thus have to have been brought by January 1,1977. Since the trustee’s rights did not come into existence until April 5, 1977, the date the petition in bankruptcy was filed, the trustee’s challenge to the 1975 notice must fail.
 

 The 1976 transaction, however, is not similarly immune. No bulk transfer notice was ever published or recorded regarding that transaction. The statute of limitations does not bar the trustee’s challenge to the 1976 security interest, for the trustee has two years from the date of the adjudication of the debtor as a bankrupt to bring any challenge for which the statute of limitations had not expired on the date the petition in bankruptcy was filed.
 
 [8]
 
 Since no
 
 *562
 
 bulk transfer notice was published, the 1976 security interest, standing alone, is avoidable by the trustee. Yet the 1976 loan was merely a refinancing of the loan made in 1975, which we have held to be immune from attack. When the Bank made the 1976 loan it was not required to file a new financing statement to cover the collateral already pledged in 1975. The fact that one was filed does not void the 1975 financing statement, for only the expiration of the 5-year time limit provided for in California Code § 9403
 
 [9]
 
 or the filing by the Bank of a termination statement
 
 [10]
 
 would have that effect.
 

 Because the 1975 financing statement is immune from challenge, and the filing of the 1976 statement did not void it, we hold that the trustee may avoid only that amount loaned in 1976 secured by collateral different from that pledged in 1975.
 

 IV
 

 The final portion of the bankruptcy court’s opinion held that the $32,967.69 paid by Del Norte to the Bank after it had filed its petition was a post-bankruptcy transfer contrary to § 70d of the Act. We need not decide whether § 70d prohibits the payments, however, for we hold that the payments made by Del Norte to the Bank are voidable regardless of whether § 70d applies. Had such payments been made by Del Norte while it was insolvent and within four months before the filing of the petition they would have been voidable as a preference. We will not allow unauthorized actions by a trustee which, if done by the debtor, would “be a fraud on the act, as it would work an unequal distribution of the bankrupt’s property.”
 
 Otte v. Manufacturer’s Hanover Commercial Corporation (In re Texlon Corp.),
 
 596 F.2d 1092, 1097 (2d Cir.1979), quoting
 
 Tiffany v. Boatman’s Institution,
 
 18 Wall (85 U.S.) 375, 388, 21 L.Ed. 868 (1873).
 
 [11]
 

 We thus hold that the payments made by Del Norte to the Bank must be returned. This holding, of course, does not reduce the amount to which the Bank is entitled in satisfaction of its 1975 security interest.
 

 The judgment is reversed and the cause remanded. On remand the court is to determine the value for which the 1975 collateral was sold
 
 [12]
 
 and order this amount paid to the Bank. The payments made by Del Norte to the Bank are to be offset against this amount. Any remaining excess is the property of the trustee.
 

 REVERSED and REMANDED.
 

 [1]
 

 . Because this case was commenced prior to October 1, 1979, it is governed by the Bankruptcy Act of 1898 instead of the Bankruptcy Act of 1978. Bankruptcy Act of 1978, Pub.L. 95-598, § 403(a), 92 Stat. 2683.
 

 [2]
 

 . The loans giving rise to this litigation were originally made by the Commercial and Farmer’s National Bank. Prior to the commencement of bankruptcy proceedings, Commercial and Farmers merged with The Chartered Bank of London, Appellant herein. Prior to the entry of the District Court’s order in this case, The Chartered Bank of London merged with the Union Bank.
 

 [3]
 

 . Section 9402 of the California Commercial Code, as it existed prior to 1976, required that a financing statement covering property of a debtor doing business under a trade name must list that trade name. Cal.Com.Code § 9402 (West 1964) (current version at Cal.Com.Code § 9402 (West Supp.1982).
 

 [4]
 

 . We do not condone the Bank’s failure to raise before the bankruptcy court the argument that the transition provisions save its security interests. We also do not condone the Bank’s failure to present that argument clearly and forcefully to the district court. However, because the question whether the transition provisions save the bank’s security interests is purely one of law, we may decide it at the appellate level despite the fact it was raised only peripherally below.
 
 Commodity Futures Trading Com’n v. Co Petro Marketing Group, Inc.,
 
 680 F.2d 573, 581 (9th Cir.1982).
 

 [5]
 

 .The trustee seems to suggest that it should somehow succeed to the position of a creditor, hypothetical or actual, who extended credit before the date of bankruptcy. We reject this attempt to resurrect the doctrine of
 
 Constance v. Harvey,
 
 215 F.2d 571 (2d Cir.1954),
 
 cert. denied,
 
 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716 (1955). That case allowed a trustee to assert the lien of hypothetical creditor who extended credit before the perfection of a competing creditor’s security interest.
 
 Constance
 
 was widely criticized,
 
 see, e.g., Lewis v. Manufacturers National Bank of Detroit (In Re Alikasovich),
 
 275 F.2d 454, 456-57 (6th Cir.1960),
 
 aff'd.,
 
 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961); H.R.Rep. No. 745, 86th Cong., 1st Sess. pp. 8-9 (1959); Marsh,
 
 Constance v.
 
 Harvey—
 
 The “Strong-Arm Clause” Re-Evaluated,
 
 43 Cal.L.Rev. 65 (1955), and was overturned by the Supreme Court in
 
 Lewis v. Manufacturers
 
 
 *561
 

 National Bank of Detroit,
 
 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). Writing for a unanimous Court, Justice Douglas said
 

 We think that one consistent theory underlies the several versions of § 70 sub. c which we have set forth,
 
 viz.,
 
 that the rights of creditors — whether they are existing or hypothetical — to which the trustee succeeds are to be ascertained as of “the date of bankruptcy," not at an anterior point of time. That is to say, the trustee acquires the status of a creditor as of the time when the petition in bankruptcy is filed. We read the statutory words “the rights ... of a creditor [existing or hypothetical] then holding a lien” to refer to that date.
 

 364 U.S. at 607, 81 S.Ct. at 349. (footnotes omitted).
 

 [6]
 

 .At the time these transactions were entered into, § 6102 of the California Commercial Code included the creation of a security interest in the definition of a bulk transfer, § 6102 Cal. Com.Code West Supp.1978 (amended 1979), and § 6105 provided that a bulk transfer was “fraudulent and void against any creditor of the transferor unless the transferee gives notice of the transfer in the manner and within the time hereafter provided....” Cal.Com.Code § 6105 (West Supp.1982). Under § 70e of the Bankruptcy Act, the trustee can avoid any transfer ' which is “fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act....” 11 U.S.C. 110(e) (1976) (repealed 1978). Thus if any creditor could avoid the 1975 or 1976 security interests due to the Bank’s failure to comply with the Commercial Code bulk trans-ter requirements, the trustee can also avoid them.
 

 [7]
 

 . We do not agree with the Trustee that the defects in the 1975 bulk transfer notice constituted concealment of the transfer. We have found no law in this circuit defining concealment for purposes of § 6111, and other jurisdictions are split on this point.
 
 Compare, Aerolineas Argentinas v. Hansen & Yorke Co.,
 
 12 U.C.C.Rep.Serv. 329 (N.Y.Civ.Ct.1973) (dictum) (noncompliance with Section six does not alone amount to concealment within the meaning of § 6-111)
 
 with E.J. Trum, Inc. v. Blanchard Parfums, Inc.,
 
 33 A.D.2d 689, 306 N.Y.S.2d 316 (N.Y.App.Div.1969) (failure to comply with Article 6 of the UCC was a concealment of the transfer of assets under § 6-111). We do not believe that failure to comply with the requirements of § 6107 in all respects constitutes concealment of the transfer from creditors. California has now done away with the necessity to file bulk transfer notices in connection with the creation of security interests altogether. The legislature has thus indicated its belief that there exist adequate mechanisms for notifying creditors that a security interest has been created without any bulk transfer notice whatsoever. Given that the legislature believes that creditors are adequately notified of the creation of a security interest without the filing of any bulk transfer notice, we do not believe that mere defects in a notice that has been filed, absent actual fraud, constitutes concealment of the transaction.
 

 [8]
 

 . Section lie of the Bankruptcy Act gives the trustee the power
 

 
 *562
 
 within two years subsequent to the date of adjudication ... [to] institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy.
 

 11 U.S.C. § 29(e) (1976) (repealed 1978).
 

 [9]
 

 . California Commercial Code § 9403 provides that
 

 (2) ... a filed financing statement is effective for a period of five years from the date of filing....
 

 Cal.Com.Code § 9403 (West Supp.1982).
 

 [10]
 

 . California Commercial Code § 9404 provides that
 

 (1) Whenever there is no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value, the secured party of record must on written demand by the debtor send the debt- or a statement that he no longer claims a security interest under the financing statement. ...
 

 Cal.Com.Code § 9404 (West Supp.1982).
 

 [11]
 

 . It defies logic to argue, as the Trustee suggests, that the bankruptcy court intended to authorize payments in satisfaction of a loan that he held to be unsecured. To authorize payments in a situation such as this, we hold that a specific order of the court is required; a routine countersignature will not suffice.
 

 [12]
 

 . We are told that the Del Norte assets have been sold and that the Trustee is now holding $85,557.22 pending the outcome of these proceedings. We do not know, however, how much of this amount is represented by the sale of assets pledged in 1975. We leave that issue to be resolved on remand.