## NATIONAL SURETY COMPANY *v.* STATE OF MARYLAND, to the Use of John T. Morgan.

*Assignment for Benefit of Creditors—Bond of Trustee—What Constitutes Breach—Appropriation of Mortgage Payment.*

The surety on a bond, given by one named as trustee in a conveyance for creditors, for the faithful performance of the trust, was liable to one to whom such trustee had assigned a mortgage, previously made to him by the grantors in such conveyance, which he fraudulently claimed as his own, and the amount of which, in the administration of the trust, was audited and distributed to the trustee as an individual, in satisfaction of the mortgage, and wrongfully appropriated by him, such action on his part constituting a breach of trust.            pp. 74-78

The fact that the assignee of the mortgage, having no knowledge of the trust proceeding, failed to file any claim therein, did not preclude a suit by him on the trustee's bond, the mortgage having been fraudulently filed by the trustee as belonging to him personally, and he having as trustee sold the mortgaged property free and clear of the mortgage.            pp. 78, 79

The fact that the assignee of the mortgage, in suing on the bond, stood on his rights under the deed of trust, did not involve an admission by him that the claim on the mortgage was filed by the trustee as his agent, or a ratification by him of the trustee's acts.            p. 80

It is the duty of the trustee under an assignment for the benefit of creditors to carry out the will of the assignor as expressed in the deed, and for any breach of that duty the sureties on the trustee's bond are liable.            p. 77

A bond given by the trustee under an assignment for the benefit of creditors, made payable to the State, is in fact for the benefit of all persons interested in the performance of the duties committed to the obligor, and any of such persons may sue thereon.            pp. 79, 80

*Decided January 13th, 1927.*

.Appeal from the Circuit Court for Harford County (HARLAN, J.).

Action by the State of Maryland, to the use of John T. Morgan, against the National Surety Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and PARKE, JJ.

*Joseph France,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellant.

*Robert H. Archer,* submitting on brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On November 1st, 1913, Howard A. Kelly and Susie Kelly, his wife, executed to Jacob A. Doxen, an attorney at law practicing in Harford County, a mortgage for twenty three hundred dollars on property in that county, and on March 25th, 1916, Doxen assigned that mortgage for value to John T. Morgan, by a short assignment endorsed on the original mortgage, and mailed it to Morgan, who for some unexplained reason did not record it until 1925. In the meantime Doxen, who also collected the interest on other mortgages for Morgan, sent him regularly the interest on the Kelly mortgage to and including November 1st, 1924, as though it were a valid subsisting lien.

But on April 20th, 1916, Kelly and his wife had conveyed to Doxen all their property, including the mortgaged property, in trust to convert it into cash, and apply the proceeds to the payment of the debts due by them "without preference or priority, except such as by law provided," and on April 21st, 1916, the Circuit Court for Harford County, on a bill filed to enforce it, assumed jurisdiction of the trust, and Doxen qualified as trustee by filing a bond with appellant as surety for four thousand dollars, which contained the following condition: "That if the above

bounden, Jacob A. Doxen do and shall well and faithfully perform the trust reposed in him, by said deed, or that may be reposed in him by any future decree or order in the premises, then the above obligation to be void."

On April 27th, 1916, Doxen filed answers for all of the defendants and, in his own individual answer, he stated under oath that he held the Kelly mortgage, and filed a certified copy thereof, which did not however show the assignment to Morgan, because that assignment had not then been recorded. The property was sold by Doxen as trustee, and in due course the sale was ratified, and the proceeds thereof distributed by an auditor's account, which was also finally ratified and confirmed on July 23rd, 1917. In that audit there was distributed to Jacob A. Doxen individually $2,395.92 in payment and satisfaction of the Kelly mortgage, which he had in that proceeding claimed as his own, although in fact he had assigned it to Morgan prior to the institution of the suit.

From the date of the assignment until some time in 1925, Morgan, who had no actual knowledge of the sale of the mortgaged property, had no reason to suspect that Doxen was not honest, but during that year he learned that Doxen had been indicted on several criminal charges and had absconded, and he then promptly consulted Major Robert H. Archer to learn the state in which Doxen had left the matters which he was handling for him. As a result of that visit the assignment was immediately recorded, and Morgan learned for the first time that the mortgaged property had been sold, and that it had been again mortgaged by the purchaser for an amount somewhat in excess of the Kelly mortgage. Not having received any part of the principal of his mortgage, or any interest thereon since November 1st, 1924, Morgan, on March 4th, 1926, brought suit against Doxen and the appellant on the bond to which we have referred, on the theory that Doxen's failure to pay to Morgan the money audited to Doxen in satisfaction and discharge of the Kelly mortgage constituted a breach of the condition of the bond.

The case was tried before the court sitting as a jury, and at the conclusion of the trial the appellant prayed the court to rule as a matter of law that there was no evidence in the case legally sufficient to entitle the plaintiff to recover and that its verdict should be for that defendant. The court refused that prayer, and that ruling is the subject of the first and only exception found in the record. After the refusal of that prayer, the case proceeded to a judgment for the plaintiff, from which judgment this appeal was taken.

The facts of the case, which are undisputed, are in substance as we have stated them, and the only question presented by the appeal is whether they constitute a cause of action. The appellant's liability is measured by the terms of the bond, which in substance provided that it should be effective if Doxen failed to well and faithfully perform the trust reposed in him by the deed, or that might be reposed in him by any "future order or decree in the premises." The trust reposed in Doxen by the deed was to sell all the property of the grantors and apply the proceeds, after deducting the costs of administration, to the payment of all their debts according to their legal priority, and the only order or decree passed in the case which is material to the question before us was an order of July 23rd, 1917, ratifying an audit which distributed to Doxen, as an individual, $2,395.92, on account of the Kelly mortgage. From this statement it is apparent that what happened was that Doxen, after he sold the Kelly mortgage to Morgan, knowing that the assignment of it had not been recorded, fraudulently filed it as his own, in the equity proceeding in which he qualified as trustee to sell the property of the Kellys for the benefit of their creditors, and that, when the amount of the mortgage debt and interest was audited to him in that proceeding as the record holder thereof, instead of applying that money to the satisfaction of the mortgage debt and interest, he fraudulently appropriated it to his own use. As we understand it, appellant's contention is that Morgan's loss was not directly due to any breach of trust by Doxen, but to his fraudulent act as an individual in asserting that he was the owner of the Kelly mortgage, and

that since the bond only covered his acts as trustee, appellant, the surety thereon, is not liable. That contention is, we think, too refined. It is true that Doxen's act in filing the mortgage as his own, and in withholding the fact that Morgan really owned it, was fraudulent and dishonest, but the principal purpose of such a bond, and indeed the only reason for it, is to protect those who may be interested in the trust fund from just such acts. If that protection can be whittled away by any such theory as that Doxen the individual could perpetrate frauds resulting in the waste and wrongful conversion of the trust estate, to which Doxen as trustee must be officially blind, the protection afforded by such bonds would be flimsy indeed.

The sole purpose of the Kelly deed was to devote all the property of the grantors to the payment of all of their debts, or if it proved insufficient to pay all such debts, then to apply it to the payment of such debts *pro rata* according to their legal priority, and it conveyed to Doxen all the property of the grantors upon the expressed and specified trust to carry out and effect that purpose. And when Doxen as trustee under that bond received a fund sufficient to satisfy in full the mortgage debt of the grantors, and that fund was audited to him as an individual, but for that specific purpose, and when he, knowing that he as an individual had no interest in the mortgage, and knowing too that it was held by another, and that it was due and payable, instead of applying the fund to the satisfaction of the mortgage debt, converted it to his own uses, it cannot reasonably be said that he did not commit a breach of trust. The grantors gave him all their property to pay their debts, and when he accepted the property, instead of paying their debts with it, used it for his own purposes and left them stripped of their property, but still owing their debts, he did indeed perpetrate a fraud, but one which itself was a violation of the trust which he had accepted. And whilst that fraud necessarily involved personal delinquency, nevertheless it was so intimately connected with his official delinquency that they cannot well be distinguished. For if some person, other than Doxen, had been the trustee, and such person knew, as Doxen knew, that his claim to the

mortgage debt was fraudulent, he would not in the honest administration of the trust have paid the money to satisfy the mortgage debt to Doxen, at least without obtaining a release of the mortgage. And it was only through the abuse of his official powers as trustee that Doxen was enabled to keep the fund which should have extinguished the mortgage in his possession without formally releasing it.

The only authority cited by the able and learned counsel for the appellant in conflict with that conclusion is *National Surety Co. v. State Sav. Bank,* 156 Fed. 21, but assuming that it is in point, we are unable to follow the reasoning of the majority of the court in that case. The facts involved were these. Under a Minnesota statute it was the duty of the auditor of Ramsey County to issue orders for the refund of taxes to the holders of certain certificates. One Bourne, the deputy auditor, being duly authorized to sign such refund orders, drew upon the county treasurer seven spurious refunding orders in favor of fictitious persons, and had them authenticated by the chairman of the board of county commissioners. He then forged assignments of the myths on the back of the orders and sold them to the State Savings Bank, which collected them from the county treasurer. When the fraud was discovered, the county sued the surety on the auditor's bond for the amount paid to the bank, and recovered judgment therefor. The surety paid the judgment and brought suit in the United States Circuit Court for the District of Minnesota against the bank to recover what it had paid the county, on the theory that it was subrogated to the county's rights against the bank. Aside from the question of subrogation, the case turned on whether the fraud of the deputy auditor amounted to "official delinquency" or "misconduct in office." Two of the three judges who heard the case in the Circuit Court of Appeals for the Eighth Circuit held that it did not; the third judge was of the opinion that it did. The ground on which the conclusion of the majority appears to have been based, as stated by them, was that Bourne's acts "were altogether personal in their character," and "were in no sense representative or official," and "that

no duty arising out of his official relation required him to make any of the representations or commit any of the crimes just alluded to." But if that reasoning is sound, then no such bond would be enforceable, because it rarely happens that any fiduciary or official is required by the obligation of his position to commit crimes or make fraudulent representations. Moreover, the court in that case admitted that, in a suit by the county commissioners against the surety company, Bourne's wrongful acts amounted to "misconduct in office," but that, in a suit by the bonding company against the bank, they did not. We cannot accept that reasoning, but prefer, so far as it applies to this case, the view expressed by Judge Hook, who said: "The sole test of the liability of the surety company to the county was loss resulting from official misconduct of the deputy. Precisely the same test applies between the surety company and the bank and every other person seeking indemnity for loss caused by the deputy. Now the Supreme Court of Minnesota held in effect that the loss sustained by the county by the payment of the money to the bank in redemption of the orders was due to the official misconduct of the deputy. The recovery by the county upon the bond of the surety company could have proceeded upon no other theory. The swindling scheme of the deputy commenced with his forgery of the spurious orders, and it must be conceded that this was done under color of his office; in other words that it was official misconduct. * * * If the county could recover from the surety company for the loss of the money it paid to the bank, and it was held that it could, I am unable to see why the bank, equally protected by the bond, would not, if the orders had remained on its hands, be entitled to recover the money it paid to the deputy auditor."

The general rule, as stated in *Duckett v. Mechanic's Bank,* 86 Md. 403, is that "every violation by a trustee of a duty which equity lays upon him, whether wilful or forgetful, is a breach of trust." It is the duty of the trustee, under an assignment for the benefit of creditors, to carry out the will of the assignor as expressed in the deed (5 *C. J.* 1209), and for any breach of that duty the sureties on the trustee's bond

are liable, *Ibid.* 1306; 39 *Cyc.* 648. And since in our opinion there is nothing in the facts of this case to take it out of the reach of these general principles, our judgment is that Doxen's wrongful appropriation of the money which should have been applied to the extinguishment of the Kelly mortgage was a breach of the trust reposed in him by the deed.

The appellant, however, suggests that under the law of this state no creditor can acquire any rights under a deed for the benefit of creditors unless he accepts it and files his claim, and he cites *National Park Bank v. Lanahan,* 60 Md. 510. But the question in that case was whether the creditor was bound to come in and submit to the jurisdiction of the court in such a proceeding, or whether he could prosecute any legal remedies he might have, independently of it, and the Court decided that he was not obliged to submit to the jurisdiction of the court, but could pursue any remedies he might have at law. But that is not the same thing as holding that a creditor, having no knowledge of the proceeding, and not an actual party to it, could not charge the trustee with a breach of trust when he appropriated money to his own use which was dedicated by the terms of the trust to the payment of a mortgage debt which the creditor held, and could not proceed against his bond for such breach. In this case Morgan did not file his claim; it may be assumed that he knew nothing of the proceeding, but his mortgage was filed by Doxen, who held the record title to it, and the property was sold free and clear of the mortgage, and it may be presumed also that, if the trustee had not undertaken to satisfy the mortgage, the purchase price would have been less than it was by the amount of the mortgage debt and interest. And when the trustee in selling the property undertook to pay outstanding liens against it, and the proceeds of sale were audited to him for that purpose, we do not think it can be said that the lienors had no interest in his performance of that duty, nor that they acquired no rights under a deed which directed the trustee to do that very thing.

When Doxen took title to the property as trustee under the deed he only acquired the equity of redemption in the

mortgaged property, and when, as trustee, he undertook to sell
it free and clear of the mortgage, good faith required that he
should, before accepting the purchase price, satisfy the mort-
gage outstanding against it, so that the purchaser who bought
free of liens would not be obliged to pay, in addition to the
purchase price, the outstanding unsatisfied mortgage against
it.    That he did sell it in that way is obvious, because, not
only was the mortgage filed in the case, but the money to
satisfy it was audited to him.   It thereupon became and was
his duty to pay such lien, that the purchaser might get what
he paid for at the price he agreed to pay, and the lien of the
mortgage followed the fund into his hands.   When the sale
was finally ratified, the mortgage was overdue, and Doxen
as trustee under such circumstances not only had the power,
but it was his duty, to pay it, and so long as the money to pay
it remained in his hands as trustee, he could have been com-
pelled to apply it to the extinguishment of the mortgage.   *In
re Windhorst,* 107 Iowa 58.   To say that, under such circum-
stances, the real owner of the mortgage has no right to proceed
against Doxen's bond to recover the amount of the mortgage
debt, when Doxen, instead of applying the money audited to
him for its payment to that purpose, appropriated it to his
own use, would sacrifice substantial justice to formal techni-
cality.   Doxen as trustee knew of the claim, and knew that
unless he defrauded either the purchaser at the trustee's sale,
or the mortgagee, it would have to be paid.   Under such
circumstances the formal filing of the mortgage claim was
not necessary to enable the mortgagee to hold Doxen to the
strict performance of his trust to sell "all" of the assignor's
property to pay "all" of his debts.   And as he violated that
trust, the mortgagee had the right to proceed against his bond
for the breach.   Bonds of the character of that under con-
sideration here, which are made payable to the State, "are in
fact for the benefit and security of all persons who may be
interested in the performance of the duties committed to the
obligor, as essentially as if made payable directly to such
persons." *Pearson v. McMillan,* 37 Miss. 608.   And that
they may be taken in the name of the State was settled as

long ago as *Kiersted v. State,* 1 G. & J. 248, where the Court said: "And we further think, that to promote the execution of similar legislative provisions, it may be well received as a settled rule for the government of our courts of justice, that obligations in which many persons are interested, be taken in the name of the State of Maryland, whenever the law is silent in naming the obligees to whom they are to be given." But that case is authority too for the principle that any person interested in the performance of the condition of the bond can sue on it, and to the same effect are *Ing v. State,* 8 Md. 287, and *State v. Graver,* 115 Md. 246.

But the appellant insists that, as the appellee in his declaration stands on his rights under the deed of trust, he must admit that the claim was filed for him by Doxen as his agent and ratify his acts, but from what we have said that is not necessary, because, if Doxen knew of appellee's claim, and undertook to pay it, it was not necessary for appellee to file it in order to enable the trustee to perform that undertaking, and if Doxen filed it without the knowledge of the true owner thereof, but in fraud of his rights, he certainly cannot be regarded as the agent of the owner. It therefore becomes unnecessary to consider whether Doxen as trustee must be presumed to have paid the sum audited to him as an individual, under the rule that, where the same hand is to pay and to receive, payment will be presumed, although it may be said that the application of that principle to such a case as this is not free from doubt, in view of what was said in *Estate of Williams,* 1 Md. Ch. 28.

This case is not free from difficulty and doubt, and the experience and research of counsel for the parties have not enabled them to refer us to any case precisely in point, nor have we discovered any, but after a careful consideration of the facts, in connection with the general principles and the authorities to which we have referred, we cannot say that the trial court erred in refusing to withdraw it from the consideration of the jury, and the judgment will therefore be affirmed.

*Judgment affirmed, with costs.*