[Civ. No. 51042. Second Dist., Div. Three. Dec. 29, 1977.]

THE PEOPLE ex rel. FRANCHISE TAX BOARD,
Plaintiff and Appellant, v.
CREDIT MANAGERS ASSOCIATION OF SOUTHERN
CALIFORNIA, Defendant and Respondent.

346

## Counsel

Evelle J. Younger, Attorney General, Philip C. Griffin and Patti S. Kitching, Deputy Attorneys General, for Plaintiff and Appellant.

Gendel, Raskoff, Shapiro & Quittner, Richard S. Berger and Bernard P. Simons for Defendant and Respondent.

## Opinion

**COBEY, Acting P. J.**—Plaintiff, State Franchise Tax Board (hereafter Board), appeals from a judgment, following trial to the court, denying

priority under Revenue and Taxation Code section 26312, subdivision (a),[1] to its tax claim as against defendant, Credit Managers Association of Southern California (hereafter CMA), with respect to the proceeds of certain assets assigned to CMA by the taxpayer, Cryo-Sonics, Inc., a California corporation. The Board's claim was for more than $17,980.03 in unpaid corporate taxes, penalties and interest owed by the taxpayer.

The Board contends that the priority of its claim for these unpaid taxes, etc. attached upon the taxpayer becoming insolvent on March 21, 1967. CMA rejoins that by its express terms "[t]his section does not give the state a preference over any recorded lien which attached prior to the date when the amounts required to be paid became a lien," that CMA's lien attached when it duly perfected its security interest in these assets of the taxpayer by filing with the Secretary of State a financing statement covering them on March 31, 1967, that the Board did not record its certificate of tax, etc. due until September 4, 1969, and that this last-mentioned date is the time when under the express language of Revenue and Taxation Code section 26161, the Board's claim became a lien.[2] CMA points out that this result accords with Civil Code section 2897, which provides in pertinent part: "Other things being equal different liens upon the same property have priority according to the time of their creation. . . ."

■ ■■■ The Board replies that (1) CMA did not acquire a valid security interest in the transferred accounts receivable and contracts payable and their proceeds by reason of California Uniform Commercial Code section 9104, subdivision (f); (2) if it did, its security interest did not, by the very terms of the agreement creating it, extend to funds necessary to pay taxes; (3) the filing of the financing statements did not create a recorded lien within the meaning of the aforementioned Revenue and Taxation Code section 26312.[3]

[1]Section 26312, subdivision (a), at all times material to this litigation read: "The amounts required to be paid by any taxpayer under . . . [The Bank and Corporation Tax Law] together with interest and penalties shall be satisfied first in any of the following cases: (a) Whenever the taxpayer is insolvent."

[2]In relevant part section 26161 reads:
"From the time of the filing for record, the amount of the tax, interest, penalty, . . . set forth constitutes a lien upon all property of the taxpayer in the county, owned by the taxpayer or afterward and before the lien expires acquired by it."

[3]The Board claims that the refusal of this court and of the Supreme Court to vacate by extraordinary writ the trial court's denial of CMA's motion for summary judgment in this case is res judicata of the basic issue herein of the proper interpretation of section

## FACTS

On March 21, 1967, the aforementioned Cryo-Sonics, Inc., a California corporation, and Nevada Cryo-Sonics, Inc., a related Nevada corporation,[4] were each unable to meet their obligations as they became due and had insufficient cash flow to complete their work in process. They were therefore insolvent. (See *People* v. *Biscailuz* (1950) 95 Cal.App.2d 635, 637-640 [213 P.2d 753].) On this last-mentioned date the two corporations entered into a written "Creditors' Moratorium and Extension Agreement," under which almost all of the generally unsecured creditors of the two corporations, holding claims which had accrued before June 17, 1966, agreed to a limited moratorium upon the enforcement of their claims and a limited extension of the time of the payment of those claims during which period the two corporations would continue their operations under the supervision of a creditors' committee in return for the two corporations assigning to CMA, for the benefit of the creditors consenting to the agreement, the accounts receivable and contracts payable of the two corporations. Under the agreement, though, the two corporations were expressly permitted, so long as they complied with the agreement otherwise, to retain from their realization from the assigned accounts receivable and contracts payable "such amounts as may be necessary to provide for . . . current taxes and payroll, and other normal expenses" as approved by the creditors' committee. The two corporations expressly agreed further that during the term of the agreement they would be and remain on a current basis with respect to taxes.

Pursuant to this agreement, on this same day—March 21, 1967, the two corporations executed a written "sale of accounts and contract rights" to CMA, which assignment CMA accepted in writing. This assignment contained essentially the same language as that already quoted with respect to "current taxes."

---

26312. This claim is without merit. Such denials were unaccompanied by opinions and therefore cannot be given this effect. (See *People* v. *Medina* (1972) 6 Cal.3d 484, 488-492 [99 Cal.Rptr. 630, 492 P.2d 686].)

The Board's further contention that its interpretation of section 26312 should be followed by us is unpersuasive. If this interpretation is legally incorrect, we should not follow it. (See *A. S. Schulman Electric Co.* v. *State Bd. of Equalization* (1975) 49 Cal.App.3d 180, 184-185 [122 Cal.Rptr. 278].)

[4] The Nevada corporation was formed to acquire the assets of the California corporation, which it apparently did. Subsequently the Nevada corporation purchased other tools and equipment.

On March 31, 1967, CMA duly filed with the Secretary of State two financing statements for the two corporations covering (with certain specified exceptions contemporaneously released) "[a]ll rights to payment under accounts receivable and contract rights existing on the 17th day of June 1966, and all of such rights arising thereafter."

On December 4, 1969, the Board recorded in Los Angeles County a certificate of the amount of tax, etc. due from Cryo-Sonics, Inc., the aforementioned taxpayer. This certificate covered its 1963 and 1964 corporate taxes as well as a provisional amount for its 1969 tax.[5]

CMA has distributed to creditors of the two aforementioned corporations virtually all of the assets and proceeds therefrom transferred to CMA by the two corporations on March 21, 1967.

## DISCUSSION

As previously noted, the Board first contends, with respect to CMA's claim of a prior recorded lien in the proceeds of the assets transferred to it by the two corporations, including the taxpayer, that CMA could not create a valid security interest in such proceeds in favor of itself because the transaction involved is excluded from the division of the California Uniform Commercial Code (div. 9) authorizing secured transactions. The Board, in making this contention, relies exclusively upon California Uniform Commercial Code section 9104, subdivision (f), which reads in pertinent part: "This division does not apply . . . (f) To . . . an assignment of accounts . . . which is for the purpose of collection only, . . ."

We believe that the Board's reliance upon this statutory language is misplaced. The assignment at issue here was not for the purpose of collection *only*. As we have already suggested, the assignment constituted consideration for the consenting creditors granting to the two debtor corporations under the agreement a limited moratorium upon the enforcement of their claims against the corporations and a limited extension of the time within which the corporations might pay those claims.

---

[5]The Board's original assessments of this taxpayer's 1963 and 1964 corporate taxes were issued in 1966, protested, and affirmed in October of 1968.

The agreement and the assignment, taken together, clearly constituted a transaction intended to create a security interest in favor of CMA in the assigned accounts receivable, contracts payable and their proceeds. (See Cal. U. Com. Code, § 9102, subd. (1)(a); cf. *Komas* v. *Small Business Administration* (1977) 71 Cal.App.3d 809, 816 [139 Cal.Rptr. 669].) The agreement itself was clearly a security agreement creating a security interest in CMA within the meaning of California Uniform Commercial Code section 9105, subdivision (1). The assignment transferred the collateral to CMA, the holder of the security interest. (See Cal. U. Com. Code, § 9105, subds. (c) and (m).)

■ The Board next contends that by the language of the agreement itself CMA's claimed security interest did not extend to the proceeds realized from the assets transferred by the assignment to CMA to the extent that such proceeds were needed to provide for "current taxes" of the two corporations. In this connection the Board asserts that the corporate taxes that Cryo-Sonics, Inc. owed for 1963 and 1964 were current taxes in March 1967 because at that time the Board's assessments of those taxes were still under protest.

This is a misreading of the relevant provisions of the agreement and of the assignment. These provisions were placed in these documents so that the two debtor corporations might use a portion of their realization from their otherwise assigned assets to provide themselves with whatever funds they might need to keep operating during the moratorium and extension period. More specifically, the purpose of these provisions was to permit the two debtor corporations to take from the proceeds of these otherwise assigned assets whatever they might need to take care of current taxes, payrolls and other normal expenses as approved by the creditors' committee. But, as to taxes, the obligation of the two debtor corporations under the agreement was a simple one—to be and to remain on a current basis. This the taxpayer corporation, Cryo-Sonics, Inc. did with respect to its 1963 and 1964 corporate taxes at issue by protesting the assessments of them and thereby deferring its obligation to pay those taxes until the assessments were affirmed in October 1968. Thus, at the time of the assignment to CMA and also at the time CMA perfected its security interest in the assigned assets, this taxpayer was current with respect to these taxes by means other than payment of them and therefore had no need to avail itself of its privilege under the agreement of withholding from its realization from the assigned assets monies needed to pay these taxes. Consequently, the tax provisions of

the agreement did not lessen the reach of CMA's security interest created by the agreement.

■ As previously indicated, the next contention is that CMA's filing of the appropriate financing statements with the Secretary of State covering the rights to payment from the assigned accounts receivable and contracts payable did not constitute the recordation of a lien thereon within the meaning of Revenue and Taxation Code section 3612. This contention is meritless. The filing of a financing statement serves exactly the same purpose as the recordation of more traditional liens—namely, the giving of notice to the world of the claimed existence of the lien involved. Filing of a financing statement under the California Uniform Commercial Code is the functional equivalent of more traditional forms of recordation and should be given the same effect.

The priority under Revenue and Taxation Code section 26312 of CMA's earlier "recorded lien" over the Board's later recorded tax lien is clear. Identical language in two other taxing statutes to that found in section 26312 and quoted near the outset of this opinion has been given this preferential effect. (See *People* v. *Biscailuz, supra,* 95 Cal.App.2d at pp. 637, 643, with respect to what is now Unemp. Ins. Code, § 1702; *Durkin* v. *Durkin* (1955) 133 Cal.App.2d 283, 285-286 [284 P.2d 185], with respect to Rev. & Tax. Code, § 6756.)

DISPOSITION

The judgment under appeal is affirmed.

Allport, J., and Potter, J., concurred.