507 A.2d 172

**FARMERS & MERCHANTS NATIONAL BANK OF HAGERSTOWN**

v.

**Roger SCHLOSSBERG, Assignee et al.**

No. 64, Sept. Term, 1985.

Court of Appeals of Maryland.

April 11, 1986.

Omer T. Kaylor, Jr. (Kaylor & Wantz, on brief), Hagers-town, for appellant.

Deborah B. Bacharach, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., and Linda Koerber Boyd, Asst. Atty. Gen., on brief) Baltimore, for appellees.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

The issue presented in this appeal is the relative priority, in proceedings for distribution of an estate assigned by a debtor for the benefit of its creditors, of a claim of the State for unpaid sales and use taxes, and a security interest perfected before the assignment and before the State's filing of its lien for the unpaid taxes.

## I.

On December 28, 1982, Paramount Interiors, Inc., a Maryland corporation, executed an assignment for the benefit of its creditors by which it transferred all of its assets to Roger Schlossberg as assignee. At the time of the assignment, the Farmers & Merchants National Bank of Hagerstown held a security interest in Paramount's inventory, equipment, and accounts receivable, including after-ac-

quired property and proceeds, securing a loan of which $240,687.09 in principal and interest remained outstanding and upon which interest continued to accrue at the rate of 12½% per year. The security interest had been duly perfected on July 19, 1979.

Paramount was also indebted to the State of Maryland for unpaid sales and use taxes at the time of the assignment. A lien for these unpaid taxes, plus interest and penalties, in the amount of $3,331.63 was filed against Paramount on December 10, 1982, by the Comptroller of the Treasury, Retail Sales Division. On April 15, 1983, the State filed a Prior Preferred Tax Claim against Paramount's estate in which it increased its allegation of Paramount's sales and use tax liability, including interest and penalties, to $5,816.37, and further alleged that interest would continue to accrue at the statutory rate of 0.75% per month until the taxes were paid.

Schlossberg, as assignee, filed a Petition for Assumption of Jurisdiction in the Circuit Court for Washington County on December 29, 1982, seeking that court's assumption of jurisdiction over the distribution of Paramount's estate; the bank subsequently filed a Consent to Assumption of Jurisdiction. The circuit court (Corderman, J.) granted Schlossberg's petition and entered an order assuming jurisdiction over the estate.

On May 31, 1983, the bank, with the consent of the assignee, petitioned the circuit court to approve a partial distribution to be made to the bank as a secured creditor. The petition recited that the inventory, fixtures, and equipment subject to the bank's security interest had been sold by the assignee who held net proceeds of $76,630. The bank sought payment to it of these net proceeds from its security, less $5,000 to be held as a reserve by the assignee to cover certain expenses of administration and the claim of the State of Maryland, if allowed. The circuit court so ordered.

On July 25, 1984, the bank filed a petition in the circuit court for an order directing Schlossberg to distribute the $5,000 reserve to the bank. The State filed an answer in which it asserted the priority of its claim to this reserve on the basis of Maryland Code (1957, 1980 Repl.Vol.), Article 81, §§ 202(b), 343, and 394. On December 4, 1984, the circuit court entered an order according the State's claim priority over that of the bank. The bank filed a timely appeal to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before the intermediate appellate court's consideration of the case.

## II.

The bank maintains that its perfected security interest is entitled to priority over the State's claim for unpaid taxes by operation of §§ 9–201 and 15–102(b) of the Commercial Law Article.[1] Section 9–201 states that "[e]xcept as otherwise provided by Titles 1 through 10 of this article a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Section 1–201(12) defines "creditor" broadly to include "a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtor's or assignor's estate."

The security agreement between the bank and Paramount provides that, upon default by Paramount, the bank may exercise all of its rights and remedies under Title 9, including taking possession of the collateral and selling it in a commercially reasonable manner. An assignment for the

---

1. Section 9–201 was enacted by chapter 538, § 1, of the Acts of 1963, and has not been subsequently amended. The precursor of § 15–102 was enacted by chapter 383 of the Acts of 1888, and has been substantively amended on several occasions. *See* chapter 490, Acts of 1979; chapter 311, Acts of 1978; chapter 388, Acts of 1976; chapter 49, § 3, Acts of 1975; chapter 162, Acts of 1949; chapter 467, Acts of 1935; chapter 184, Acts of 1896.

benefit of creditors by Paramount is expressly stated to be an event of default. The security agreement further provides that the proceeds from the sale of the collateral must be applied to satisfy the indebtedness underlying the bank's security interest, subject only to the prior payment of certain expenses incident to the disposition of the collateral. Nothing in Titles 1 through 10 of the Commercial Law Article provides that such a security agreement is ineffective against the State. Thus, § 9–201 purports to afford the bank's antecedent perfected security interest priority over the claim of the State, as a creditor of Paramount.

The bank also cites § 15–102(b) of the Commercial Law Article, which, it argues, conflicts with and supersedes the tax statutes relied upon by the State. Section 15–102(b) establishes certain priorities in the distribution of property following an assignment for the benefit of creditors:

"The property of an insolvent who makes an assignment for the benefit of creditors or who has his property taken by a receiver under a decree of a court in an insolvency proceeding shall be applied to the following, in the order stated:

(1) Costs and expenses of the administration of the trust or insolvency proceeding which the court approves;

(2) Wages of an employee and health, welfare, and pension contributions contracted for in place of wages, earned not more than three months before the assignment or institution of the insolvency proceeding;

(3) *Lien claims of the State,* a county, municipal corporation, or other political subdivision of the State *perfected or recorded before the assignment* or institution of the insolvency proceeding, and claims of persons having judicial liens on property of the insolvent recorded more than four months before the assignment or institution of the insolvency proceeding;

(4) Unsecured claims of individuals, to the extent of $900 for each individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the

purchase of services, for the personal, family, or household use of the individuals, that were not delivered or provided;

(5) Rent for any interest in real property in the State due not more than three months before the execution of the assignment or institution of the insolvency proceeding;

(6) Charges in connection with the transportation of goods advanced by one common carrier to another on behalf of a consignor or consignee not more than three months before the assignment or institution of the insolvency proceeding;

(7) *Taxes not included in paragraph (3) of this subsection;* and

(8) Claims of unsecured creditors." (Emphasis added.)

The bank maintains that, although § 15–102(b) is silent as to the relative priority of a perfected security interest, such an interest has priority, implicitly, over all the claims listed in this section. Since paragraphs 3 and 7 of § 15–102(b) purport to provide for the priority of all state tax claims, the bank concludes that its security interest must have priority over the State's claim in this case.

The State contends that, notwithstanding §§ 9–201 and 15–102(b) of the Commercial Law Article, its claim for unpaid taxes is entitled to priority over the bank's perfected security interest by reason of §§ 202(b), 343, and 394 of Article 81.[2] Section 202(b) states that

"[w]henever a sale of either real or personal property of a corporation, from which State taxes, are due and payable, shall be made by any sheriff, constable, trustee, receiver or other ministerial officer, under judicial process or

---

**2.** The precursor of § 202(b) was enacted by chapter 208, § 7, of the Acts of 1843, and has been substantively amended on several occasions. *See* chapter 226, § 142, Acts of 1929; chapter 518, Acts of 1892; chapter 483, § 63, Acts of 1874. Sections 343 and 394 were enacted, respectively, by chapters 281 and 681 of the Acts of 1947, and neither has been subsequently amended.

otherwise, all sums due and in arrears for State taxes from the corporation whose property is sold shall be first paid and satisfied, after the necessary expenses incident to the sale...."

Sections 343 and 394 apply, respectively, to claims for state sales and use taxes, and contain the following identical language:

"Whenever the business or property of any person subject to tax under the terms of this subtitle shall be placed in receivership, bankruptcy or assignment is made for the benefit of creditors, or if said property is seized under restraint for property taxes, all taxes, penalties and interest imposed by this subtitle for which said person is in any way liable shall be a prior and preferred claim. No sheriff, receiver, assignee or other officer shall sell the property of any person subject to tax under the terms of this subtitle under process or order of any court without first determining from the Comptroller the amount of any taxes due and payable by said person, and if there be any such taxes due, owing or unpaid it shall be the duty of such officer to first pay to the Comptroller the amount of said taxes out of the proceeds of said sale before making any payment of any moneys to any judgment creditor or other claimants of whatsoever kind or nature."

None of these three sections of Article 81 creates a lien for unpaid taxes, and each purports to afford tax claims priority whether or not the claims have been reduced to liens. *See Vermont Fed. S. & L. v. Wicomico Co.,* 263 Md. 178, 184–85, 283 A.2d 384 (1971); *Wethered, Tr. v. Alban Tractor,* 224 Md. 408, 417, 168 A.2d 358, *cert. denied,* 368 U.S. 830, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961).

### III.

As the State points out, § 15–102(b) does not expressly provide for the priority of a perfected security interest in proceedings following an assignment for the benefit of creditors. If the bank's interpretation of § 15–102(b) is incorrect, and its security interest does not have priority

over the claims there enumerated, then § 15–102(b) is not implicated in this case and it would become unnecessary for us to consider any possible conflict between this statute and the tax statutes relied upon by the State. As a threshhold matter, therefore, we address the bank's interpretation of § 15–102(b).

█ Statutes governing creditors' rights in insolvency proceedings are in pari materia. *See Allegaert v. Chemical Bank,* 657 F.2d 495, 502 (2d Cir.1980); *In re Schlageter,* 319 F.2d 821, 822 (3d Cir.1963); *Quinn v. Voorhees,* 194 Kan. 574, 400 P.2d 986, 991 (1965); *Seaboard Finance Company v. Barnes,* 378 Mich. 627, 148 N.W.2d 756, 759 (1967). As such, they must be interpreted with reference to one another and harmonized to the extent reasonably possible. *See Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142 (1985); *Willis v. State,* 302 Md. 363, 375, 488 A.2d 171 (1985); *Unnamed Physician v. Comm'n,* 285 Md. 1, 10, 400 A.2d 396 (1979); 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 51.02, .03 (rev. 4th ed.1984). This principle applies regardless of whether the statutes were enacted at different times and without reference to one another. *See Management Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310 (1984); *Hope v. Baltimore County,* 288 Md. 656, 666, 421 A.2d 576 (1980); *Dep't of Nat. Resources v. France,* 277 Md. 432, 461, 357 A.2d 78 (1976).

As already discussed, § 9–201 makes a valid security agreement "effective according to its terms" against all creditors unless another provision in Titles 1 through 10 of the Commercial Law Article provides to the contrary. *See Guy Martin Buick, Inc. v. Colorado Springs Nat. Bank,* 32 Colo.App. 235, 511 P.2d 912, 914 (1973), *aff'd,* 184 Colo. 166, 519 P.2d 354 (1974); *Walter E. Heller & Company, Inc. v. Salerno,* 168 Conn. 152, 362 A.2d 904 *passim* (1975); *Citizens Nat. Bank, etc. v. Mid-States Dev. Co.,* 177 Ind. App. 548, 380 N.E.2d 1243, 1248 (1978); *Salzer v. Victor Lynn Corporation,* 114 N.H. 29, 315 A.2d 185, 186 (1974);

8 R. Anderson, *Uniform Commercial Code* § 9–201:5
(1985); J. White & R. Summers, *Handbook of the Law
Under the Uniform Commercial Code* § 25–2 (2d ed.1980).
We think the definition of "creditor" in § 1–201(12), quoted
earlier, is broad enough to encompass the State's relation-
ship to Paramount arising from Paramount's state tax
liability. Although we are aware of no cases in which the
applicability of this definitional provision to governmental
entities has been considered, other courts have uniformly
held federal, state, and local governments to which taxes or
other obligations were owed to be "creditors" in the context
of other commercial law statutes. *See, e.g., United States
v. Fernon,* 640 F.2d 609, 613 (5th Cir.1981) (federal govern-
ment's claim for tax deficiencies made it a "creditor" for
purposes of Florida's fraudulent conveyances statute); *In
re Columbia Tobacco Co.,* 121 F.2d 641, 643 (2d Cir.1941)
(tax claims of state and city made them "creditors" for
purposes of federal bankruptcy statute); *Edmundson v.
Scofield,* 92 F. Supp. 91, 95 (S.D.Tex.1950) (federal govern-
ment's lien for unpaid taxes made it a "creditor" for pur-
poses of Texas' lien recordation statute); *Crabb v. Estate of
Mager,* 66 A.D.2d 20, 412 N.Y.S.2d 508, 510 (N.Y.App.Div.
1979) (where county department of social services had claim
against decedent's estate for medical assistance benefits,
county commissioner was a "creditor" for purposes of New
York's fraudulent conveyances statute); *Lindstrom v.
Spicher,* 53 N.D. 195, 205 N.W. 231, 233 (1925) (county's
claim for unpaid taxes made it a "creditor" for purposes of
North Dakota's bulk sales statute); *State v. Bean,* 218 Or.
506, 346 P.2d 652, 655 (1959) (where state department of
labor had been assigned claim for unpaid wages, state
commissioner was a "creditor" for purposes of federal
bankruptcy statute). *Cf. Rockower Bros. v. Comptroller,*
240 Md. 379, 392, 214 A.2d 581 (1965) (holding that a vendor
stands in the relationship of debtor to the State with respect
to sales tax liability).

The security agreement between the bank and Paramount
purports to grant the bank's perfected security interest

priority over all creditors, after payment of the costs incident to the disposition of the collateral, and nothing in Titles 1 through 10 vitiates this grant of absolute priority. Thus, § 9–201, read literally, would provide the bank's perfected security interest with priority over all the claimants listed in § 15–102(b).

Nothing in § 15–102(b) addresses the priority of the claims there enumerated in relation to an antecedent perfected security interest. Several statutory provisions, however, clearly mandate that the claim of an assignee for the benefit of creditors is subordinate to an antecedent perfected security interest. As indicated earlier, §§ 9–201 and 1–201(12) make a security agreement providing absolute priority to an antecedent perfected security interest effective against an assignee for the benefit of creditors. Similarly, § 9–302(1)(g) provides that an assignee's claim is perfected as of the date of the assignment, and § 9–312(5)(a) states that conflicting security interests rank according to priority in time of perfection. Finally, § 15–101(d) specifies that the assignee's rights in the assigned assets, as of the date of the assignment, are limited to those of a judgment creditor, a creditor with an unsatisfied execution, and a lien creditor.[3] The claims of such creditors are made subordinate to an antecedent perfected security interest by operation of § 9–201.[4]

---

**3.** By chapter 545 of the Acts of 1985, § 15–101(d) was repealed and reenacted with amendments as § 15–101(f). Because the amendments apply only to assignment for the benefit of creditor proceedings filed on or after July 1, 1985, the amendments are not relevant to our disposition of this case. *See* chapter 545, § 2, Acts of 1985.

**4.** Analogous statutes from other states have been held to provide an antecedent perfected security interest with priority, according to the terms of the relevant security agreement, over a claim of a trustee in bankruptcy proceedings and receiver in insolvency proceedings. *See, e.g., Matter of Del Norte Depot, Inc.,* 716 F.2d 557, 560 (9th Cir.1983) (trustee in bankruptcy; applying California law); *In re Paige,* 679 F.2d 601 *passim* (6th Cir.1982) (trustee in bankruptcy; applying Michigan law); *Ingersoll-Rand Financial Corp. v. Nunley,* 671 F.2d 842 *passim* (4th Cir.1982) (trustee in bankruptcy; applying West Virginia law); *In re J.A. Thompson & Son, Inc.,* 665 F.2d 941, 947–51 (9th Cir.1982)

In light of these statutory provisions, it is patent that the rights of a secured party with an antecedent perfected security interest are never conveyed to the assignee, and that only the equity of the debtor in the collateral, if any, is part of the fiduciary estate available for distribution. *Cf. Citizens Nat. Bank, etc. v. Mid-States Dev. Co., supra,* 380 N.E.2d at 1246 (1978) (collateral in which secured party had antecedent perfected security interest held not to be part of debtor's estate in bankruptcy). Section 15–102(b) applies by its terms only after the assignment has been made, and it is therefore manifest that the claims there enumerated are to be satisfied from the fiduciary estate. We conclude that § 15–102(b) and § 9–201 are readily harmonized, and that the claims afforded priority by § 15–102(b) are subordinate to an antecedent perfected security interest.

An examination of the law governing assignments for the benefit of creditors, as it existed when what is now § 15–102(b) was enacted and subsequently amended, leads us to the same conclusion. It has long been the law in Maryland that an assignee for the benefit of creditors takes the assigned assets subject to all the equities against the assignor. *See, e.g., Plitt v. Stevan,* 223 Md. 178, 183, 162 A.2d 762 (1960); *Kellas & Co. v. Slack & Slack Co.,* 129 Md. 535, 540, 99 A. 677 (1916); *Tyler v. Abergh,* 65 Md. 18, 20, 3 A. 904 (1886). In other words, the assignee obtains the assignor's property subject to existing liens and encumbrances. *See Richardson v. Anderson,* 109 Md. 641, 645–46, 72 A. 485 (1909); *G. Ober & Sons Co. v. Keating,* 77 Md. 100, 102, 26 A. 501 (1893). Thus, in *Plitt, supra,* this Court stated that, when a valid, duly recorded chattel

---

(trustee in bankruptcy; applying California law); *Matter of Pubs, Inc. of Champaign,* 618 F.2d 432, 439, 441 (7th Cir.1980) (trustee in bankruptcy; applying Illinois law); *Matter of Schalk,* 592 F.2d 993, 996 (8th Cir.1979) (trustee in bankruptcy; applying Missouri law); *Farnum v. C.J. Merrill, Inc.,* 264 A.2d 150 *passim* (Me.1970) (receiver in bankruptcy); *August v. Poznanski,* 383 Mich. 151, 174 N.W.2d 807, 810 (1970) (trustee in bankruptcy).

mortgage exists on an asset assigned for the benefit of creditors, the assignee takes the asset subject to the chattel mortgage.

A corollary of the principle stated above is that the assignee succeeds only to the rights of the assignor. *See Kellas & Co., supra,* 129 Md. at 540, 99 A. 677; *Tyler, supra,* 65 Md. at 20, 3 A. 904. Since the assignee, therefore, never obtains the property rights validly transferred by the assignor to third parties prior to the assignment, such property rights do not become part of the fiduciary estate. Applying this principle in *Nat. Surety Co. v. State,* 152 Md. 71, 136 A. 274 (1927), the Court explained that the assignee, who had sold assigned property upon which an antecedent mortgage existed, was required to satisfy the outstanding mortgage before accepting the purchase price as part of the fiduciary estate. 152 Md. at 78–79, 136 A. 274. Similarly, in *Union Bank v. Mechanics' Bank,* 80 Md. 371, 30 A. 913 (1895), the Court observed that "[t]he creditor who holds collateral securities for his claim, has the advantage over other creditors to the extent of their value, or what he may realize upon them," and, furthermore, that the creditor could participate with the other creditors in the pro rata distribution of the estate to the extent of any deficiency. 80 Md. at 382–83, 30 A. 913. *See also* 6 Am.Jur.2d *Assignments for the Benefit of Creditors* § 18 (1963) (debtor may not assign greater interest in property than that he possesses).

We presume that the legislature was aware of this body of case law when it enacted and subsequently amended what is now § 15–102(b). *See City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984); *Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982); *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301 (1981). We further presume that, had the legislature intended to overrule the principles enunciated in these cases, it would have done so explicitly. *See Hardy v. State,* 301 Md. 124, 131, 482 A.2d 474 (1984); *Bradshaw v. Prince George's County,* 284 Md. 294, 302, 396 A.2d 255 (1979).

Since the relevant case law provides that an asset of an assignor which secures an antecedent perfected security interest does not enter the fiduciary estate until the indebtedness underlying the security interest has been satisfied, and since nothing in § 15–102(b) provides to the contrary, we think it is implicit in this section that the claims there enumerated are subordinate to an antecedent perfected security.

IV.

Because the General Assembly is presumed to have intended that all its enactments operate together as a consistent and harmonious body of law, statutes will be interpreted, whenever reasonably possible, to avoid repeal by implication. *See Management Personnel Serv., supra,* 300 Md. at 341, 478 A.2d 310; *Board of Educ., Garrett Co., supra,* 295 Md. at 62–63, 453 A.2d 1185; *Carroll Co. Educ. Ass'n v. Bd. of Educ.,* 294 Md. 144, 152, 448 A.2d 345 (1982); *Comm'n on Med. Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232 (1977); 1A N. Singer, *Sutherland on Statutes and Statutory Construction* § 23.10 (rev. 4th ed. 1985). If two statutes contain an irreconcilable conflict, however, the same presumed legislative intent requires that the statute whose relevant substantive provisions were enacted most recently be held to have repealed by implication any conflicting provisions of the earlier statute. *See Board of Educ., Garrett Co., supra,* 295 Md. at 62–63, 453 A.2d 1185; *Carroll Co. Educ. Ass'n, supra,* 294 Md. at 152, 448 A.2d 345; *Dep't of Nat. Resources v. France, supra,* 277 Md. at 460, 357 A.2d 78 *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 494–95, 331 A.2d 55 (1975); 1A N. Singer, *Sutherland on Statutes and Statutory Construction* § 23.09 (rev. 4th ed.1985).

We agree with the bank that § 202(b) of Article 81 and § 15–102(b) of the Commercial Law Article are irreconcilable: § 202(b) would provide an absolute priority to all tax claims in a distribution of an estate following an assignment for the benefit of creditors, while § 15–102(b) would

make all tax claims subordinate to certain other claims in such a distribution. To determine which is the controlling statute, therefore, we must examine the history of these two enactments.

The precursor of § 202(b) was enacted by chapter 208, § 7, of the Acts of 1843, and its operative language differed little from that of the present statute: "whenever sales of either real or personal property shall be made, by any ministerial officer, under judicial process or otherwise, all sums due and in arrear for taxes, from the party whose propery is so sold, shall be first paid and satisfied." The statutory provision acquired its present language in 1929, when it was amended to create what are now § 202(a) and (b). *See* chapter 226, § 142, Acts of 1929. This section has not been altered substantively since 1929.

The statutory precursor of § 15–102(b) was enacted by chapter 383 of the Acts of 1888, which provided that "whenever any person or body corporate shall make an assignment for the benefit of his, her or its creditors, or shall be adjudicated insolvent upon his, her or its petition, or upon the petition of any creditor or creditors, or shall have his, her or its property or estate taken possession of by a receiver under a decree of a court of equity, in the distribution of the property or estate of such person or body corporate, all moneys due and owing from such person or body corporate for wages or salaries to clerks, servants or employes contracted not more than three months anterior to the execution of such assignment, adjudiciation of insolvency, or appointment of receiver, shall first be paid in full out of such property or estate, after payment of the proper and legitimate costs, expenses, *taxes* and commissions, and shall be preferred to all claims against the property and estate of such insolvent person or body corporate, except the lien claims of such persons as shall hold liens upon such property or estate, recorded at least three months prior to such assignment, adjudication or decree." (Emphasis added.)

With respect to the priority of tax claims, therefore, this enactment provided only that tax claims would have priority over claims for wages or salaries.

■ In 1949, this statutory provision was amended by an act the title of which stated its purpose as "providing that wages due employees of an insolvent shall be preferred to taxes." Chapter 162, Acts of 1949. The amendment deleted the word "taxes" italicized in the passage quoted above from the 1888 legislation, and added a provision that "[t]axes legally due and owing shall have priority of payment to general creditors." By providing that all tax claims are subordinate to claims for wages, this amendment created a direct and irreconcilable conflict with what is now § 202(b). Because this amendment was enacted in 1949, and the precursor of § 202(b) was not substantively altered since at least 1929, § 202(b) was repealed by implication to the extent that it conflicts with § 15–102(b).

### V.

■ Although § 15–102(b) and § 202(b) are irreconcilable, the apparent conflict between § 15–102(b) and the two remaining statutes relied upon by the State, §§ 343 and 394, can be resolved concordantly. It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute. *See Lumbermen's Mut. Casualty v. Ins. Comm'r*, 302 Md. 248, 268–69, 487 A.2d 271 (1985); *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 717–18, 475 A.2d 454 (1984); *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 40–41, 464 A.2d 1068 (1983); *Employ. Sec. Adm. v. Browning-Ferris*, 292 Md. 515, 526, 438 A.2d 1356 (1982); 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 51.05 (rev. 4th ed.1984). Since §§ 343 and 394 purport to provide absolute priority only for sales and use taxes, therefore, these statutes constitute exceptions to the general rule of § 15–102(b) that subordinates tax claims to the various other claims there enumerated.

■  Sections 343 and 394 do not provide the State's claim for sales and use taxes with priority over the bank's antecedent perfected security interest, however. The rationale articulated earlier, in our discussion of the relationship between § 15–102(b) and § 9–201, applies with equal force here. Like § 15–102(b), §§ 343 and 394 apply by their terms only after the assignment for the benefit of creditors has been made. Thus, the priority afforded sales and use tax claims by §§ 343 and 394 applies only in relation to other claims against the fiduciary estate. As earlier explained, the relevant statutory and case law clearly provides that collateral securing an antecedent perfected security interest does not become part of the fiduciary estate until the underlying secured indebtedness has been satisfied. We conclude that the bank's perfected security interest must be accorded priority over the State's tax claim.

In its brief, the State emphasizes the strong policy considerations favoring payment of claims for unpaid taxes over payment of all other claims against an insolvent debtor. It is, of course, true that the State's interest in collecting its revenues is a most compelling one. It is also true, however, that significant policy considerations underlie the general supremacy and unassailability of a validly perfected security interest. The priority rules of Title 9 reflect a number of important policy considerations, including promoting commercial certainty and efficiency, protecting lenders' reliance on public records of existing encumbrances, encouraging the flow of commerce, and ensuring fairness in financing transactions. *See* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 3.1 [2] (1980); Special Project, *The Priority Rules of Article 9*, 62 Corn.L.Rev. 834, 837–41 (1977). The State's interpretation of §§ 343 and 394, while protecting the State's interest in collection of revenue, would impair the goals underlying Title 9 by permitting a subsequent tax claim to defeat an existing perfected security interest, and by allowing an unrecorded tax claim to defeat the claim of a lender who

makes a subsequent loan in reliance on an examination of financing statements of record.

In any event, the choice between these conflicting public policy considerations lies not with this Court, but with the General Assembly. Through its enactment of §§ 9–201, 15–102(b), 343, and 394, the legislature has reconciled these considerations in the manner it deems appropriate, and our function is to implement the legislature's purpose as embodied in these statutes. *See Hawkins v. State,* 302 Md. 143, 147, 486 A.2d 179 (1985); *Sites v. State,* 300 Md. 702, 710, 481 A.2d 192 (1984); *Management Personnel Serv., supra,* 300 Md. at 341, 478 A.2d 310.

## VI.

■ The State's final argument is based upon the provision in § 9–102(2) which states that, subject to an exception not here relevant, "[t]his title does not apply to statutory liens." Sections 342(b) and 393(b) of Article 81 provide that

"[t]he tax, and all increases, interests and penalties thereon shall be a lien upon all the property, real and/or personal, of any person liable to pay the same to the State from and after the time when notice has been given that such tax has become due and payable as provided herein.... The lien provided for in this section shall have the full force and effect of a lien of judgment."

By filing notice as required by §§ 342(b) and 393(b) on December 10, 1982, therefore, the State obtained a lien with the full force and effect of an executed lien of judgment as of that date. *See Liquor Dealers v. Comptroller,* 241 Md. 656, 660, 217 A.2d 571 (1966).

We agree with the State that its tax lien is a statutory lien within the meaning of § 9–102(2). It does not necessarily follow, however, that the State's tax lien has priority over the bank's perfected security interest. Section 9–102(2) simply requires that, in determining the relative priority to be accorded the State's statutory tax lien, we apply the law as it existed before the enactment of Title 9.

*See Universal v. Congressional,* 246 Md. 380, 390–91, 228 A.2d 463 (1967).

Under pre-Title 9 Maryland law, a duly recorded chattel mortgage has priority over a subsequently recorded or executed lien. *See American Security v. New Amsterdam,* 246 Md. 36, 38–40, 227 A.2d 214 (1967); *Balto. Bankers Corp. v. Peters etc.,* 193 Md. 655 *passim,* 69 A.2d 491 (1949); *G. Ober & Sons Co., supra,* 77 Md. at 103–04, 26 A. 501. In *American Security,* the Court expressly held that the relative priority of a chattel mortgage and a judgment lien will be determined by the priority in time of the mortgage's recordation and the judgment lien's execution. 246 Md. at 39, 227 A.2d 214. *See also* 14 C.J.S. *Chattel Mortgages* § 297 (1939, 1985 Supp.). We think *American Security* is dispositive in the present case, and requires that the bank's antecedent security interest or chattel mortgage, which was recorded on July 19, 1979, be accorded priority over the State's tax lien, which has the status of a judgment lien executed on December 10, 1982.

## VII.

Finally, we have considered two cases from other jurisdictions upon which the State places some reliance, *ITT Diversified Credit Corp. v. Couch,* 669 P.2d 1355 (Colo.1983), and *Malakoff v. Washington,* 434 A.2d 432 (D.C.1981), in which claims for unpaid taxes were held to have priority over antecedent perfected security interests. Neither case, however, persuades us to alter our holding in the present case. In *ITT Diversified,* the court's holding was predicated upon a Colorado tax statute that, unlike §§ 343 and 394, made the state's tax claim a first and prior lien on a retailer's property whether or not the property had become part of the retailer's estate in an insolvency proceeding. 669 P.2d at 1360. Although the tax statute applied by the court in *Malakoff* was essentially identical to §§ 343 and 394, the court there did not address the interaction of the tax statute and the District of Columbia's equivalent of § 9–201.

In *ITT Diversified,* the court emphasized that

"[b]efore a statute creating a lien in favor of the state for unpaid sales taxes will be construed as giving such a lien priority over a mortgage, security interest, or other contractual lien which was perfected at the time the lien came into existence, the legislative intent that such priority be given must clearly appear from the language of the statute." 669 P.2d at 1361.

Similarly, the court in *Malakoff* stressed that "this legislative intent to make claims or liens for taxes absolutely preferred must clearly appear from a strict construction of the statute." 434 A.2d at 435. *See also Steinfeld v. State,* 37 Ariz. 389, 294 P. 834, 835–36 (1930); *Wilkinson v. Wilkinson,* 51 Cal.App.3d 382, 384, 124 Cal.Rptr. 870 (1975); *Home Owners' Loan Corporation v. Hansen,* 38 Cal. App.2d 748, 102 P.2d 417, 420–21 (1940); *Gifford v. Callaway,* 8 Colo.App. 359, 46 P. 626, 268–29 (1896); *Linn County v. Steele,* 223 Iowa 864, 273 N.W. 920, 921, 924 (1937); *Magee v. Whitacre,* 60 Nev. 202, 106 P.2d 751, 754 (1940); *Burroughs v. State,* 195 Okl. 420, 158 P.2d 474, 475–76 (1944); *Miller v. Anderson,* 1 S.D. 539, 47 N.W. 957, 959 (1891); 3 C. Sands, *Sutherland on Statutes and Statutory Construction* § 66.08 (4th ed.1974). *See generally* Annot., 47 A.L.R. 378 (1927, 1930 Supp. in 65 A.L.R. 677) (the majority rule is that a tax lien "does not have priority over existing liens or encumbrances upon the real estate, in the absence of express provision to that effect").

■■■ We agree with the principle enunciated in these cases: a tax claim will be accorded priority over an antecedent lien, including a perfected security interest, only when the applicable statute clearly so provides. Of course, when a statute unambiguously affords a tax claim such absolute priority, the statute will be implemented according to its terms. Thus, in *Vermont Fed. S. & L., supra,* we held that Wiscomico County's tax claim was entitled to priority over an antecedent mortgage and security interest. The relevant statute in that case, however, like the Colorado statute construed in *ITT Diversified* and unlike §§ 343 and 394, clearly provided that the county's tax claim constituted

a prior lien as soon as the taxes were due and owing. The lien's priority was not restricted to property in an insolvent debtor's estate. *See* 263 Md. at 181, 283 A.2d 384 (quoting § 248 of the Code of Public Local Laws of Wicomico County (Everstine's ed. 1965)).

The relevant priority of tax claims and security interests has been litigated in numerous cases throughout the country, and the results have depended upon the relevant statutory language and the particular facts of each case. For cases in which security interests were accorded priority over tax claims, see *T.M. Cobb Company v. County of Los Angeles,* 16 Cal.3d 606, 547 P.2d 431, 128 Cal.Rptr. 655 (1976); *People ex rel. Franchise Tax Bd. v. Credit Managers Assn.,* 76 Cal.App.3d 344, 142 Cal.Rptr. 777 (1977); *General Motors, etc. v. Tom Norton Motor Co.,* 366 So.2d 131 (Fla.Dist.Ct.App.1979); *Teddy's Drive In, Inc. v. Cohen,* 54 A.D.2d 898, 388 N.Y.S.2d 20 (1976), *aff'd,* 47 N.Y.2d 79, 416 N.Y.S.2d 782, 390 N.E.2d 290 (1979); *Chase Manhattan Bank (N.A.) v. State,* 48 A.D.2d 11, 367 N.Y.S.2d 580 (1975), *aff'd,* 40 N.Y.2d 590, 388 N.Y.S.2d 896, 357 N.E.2d 366 (1976); *Commerce Union Bank v. Possum Holler, Inc.,* 620 S.W.2d 487 (Tenn.1981). For additional cases reaching the opposite result, see *Texas Oil & Gas Corporation v. United States,* 466 F.2d 1040 (5th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *Young v. Golden State Bank,* 632 P.2d 1053 (Colo. Ct.App.1981); *Sun First Nat. Bank of Orlando v. Miller,* 397 So.2d 943 (Fla.Dist.Ct.App.1981).

As already indicated, §§ 343 and 394 clearly afford the State's sales and use tax claims priority only as to property in the estate assigned by Paramount for the benefit of creditors. To the extent necessary to satisfy Paramount's underlying indebtedness to the bank, the collateral securing the bank's antecedent perfected security interest is not part of the assigned estate. The circuit court erred, therefore, in according the State's claim priority over that of the bank.

JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.